[Crim. No. 1624. Second Appellate District, Division Two.—October 2, 1929.]

THE PEOPLE, Respondent, v. J. F. BRYANT, Appellant.

Charles W. Ostrom, John Henderson Pelletier and Elliott H. Barrett for Appellant.

U. S. Webb, Attorney-General, and John L. Flynn, Deputy Attorney-General, for Respondent.

THOMPSON (IRA F.), J.—The defendants J. F. Bryant and E. I. Bryant were convicted on six counts of an indictment charging them and Marion R. Bryant with obtaining money by false pretenses, and acquitted on one count. The jury found the defendant Marion R. Bryant not guilty. Since this appeal from the judgments pronounced upon the verdicts and the order denying the motion for a new trial was perfected the appellant E. I. Bryant has died and the appeal by him has been dismissed, leaving as the only appellant J. F. Bryant.

Before reciting the facts in general we shall consider the statement of appellant that defendants should have been discharged because they were never arraigned or given an opportunity to plead. The situation which counsel contends justifies this assertion is as follows: The original indictment was returned by the grand jury September 26, 1927.

On November 22, 1927, the district attorney was permitted to file amendments to the indictment. Reading of the same was waived by counsel and the trial of the cause was continued until December 14, 1927. Two other continuances carried it over until January 16, 1928. As soon as the jury was sworn to try the cause, or to phrase it differently, as soon as the defendants were placed in jeopardy, counsel for the defense made a motion to discharge the defendants and dismiss the jury on the ground that they had never been arraigned or plead to the amended indictment. The amendments which had been permitted were great in number, but all of them may be illustrated by one example. The indictment (after charging the defendants with the offense of obtaining money by false pretenses) with the words or letters omitted by the amendments being indicated by a line of obliteration and the inserted words by italics, alleged that the defendants "with intent to defraud Mrs. Eliza Keogh" represented to her "that one J. E. Hopkins had purchased from them, the said J. F. Bryant, E. I. Bryant and Marion R. Bryant, twelve lots in Blocks 1 and 2, in Tract 1763 in the City of Ontario, State of California; that the said J. E. Hopkins had purchased the said lots for $4500.00 *each;* that the said J. E. Hopkins had paid $2500.00 down upon *each of* said lots and had given them, the said J. F. Bryant, E. I. Bryant and Marion R. Bryant, a̶ trust deed*s* for $2,000.00 *each* as the balance of the purchase price of *each of* said lots; that t̶h̶i̶s̶ *a certain* trust deed *covered by one of said lots* was worth the sum of $2,000.00, but that they would discount t̶h̶e̶ *one of* said trust deed*s* to her, the said Mrs. Eliza Keogh, for the sum of $1200.00; that there was a great demand for housing in this locality, and that a bungalow court was being built upon said lots; . . . " The question raised by counsel necessarily involves the right of the court to permit the amendments illustrated by the foregoing instance, without resubmission thereof to the grand jury. Section 1008 of the Penal Code, as amended in 1927, reads as follows: "An indictment or information may be amended by the district attorney without leave of court, at any time before the defendant pleads. The court may order its amendment for any defect or insufficiency, at any stage of the proceedings; and the trial shall continue as if it had been originally filed

as amended, unless the substantial rights of the defendant would be prejudiced thereby, in which event a reasonable continuance, not longer than the ends of justice require, may be granted. If the defect or insufficiency be one that cannot be remedied by amendment, the proceeding shall be dismissed, but the defendant shall not be discharged if the court shall direct the filing of a new information or the submission of the case to the same or a new grand jury. An indictment cannot be amended so as to change the offense charged, nor an information so as to charge an offense not shown by the evidence taken at the preliminary examination." It is obvious that the section just quoted contemplates the kind of amendments permitted in the instant cause. The cases of *People* v. *Rippe,* 32 Cal. App. 514 [163 Pac. 506], *People* v. *Miller,* 34 Cal. App. 641 [168 Pac. 574], *People* v. *Thal,* 61 Cal. App. 48 [214 Pac. 296], *People* v. *Hinshaw,* 194 Cal. 1 [227 Pac. 156], and *People* v. *Dempster,* 96 Cal. App. 358 [274 Pac. 592], conclusively establish the discretionary right of the trial judge to permit amendments of such nature so far, at least, as concerns informations. In *Ex parte Chambers,* 32 Cal. App. 476 [163 Pac. 223], the trial judge permitted the district attorney to amend an indictment charging perjury to show " 'what the true facts are' " and the appellate court said: "The district attorney did file an amended indictment about identically the same as the original, but adding, as we have seen, the averment that it was material to know whether the note set out in the indictment was written on January 15th or January 22d, and the further averment that it was written February 5th. But the offense was not changed. The amendment constituted at most an additional specification of the perjured testimony, and could not have prejudiced the substantial rights of the accused. In fact, the amendments simply made the indictment more certain in the respect indicated." So here, a different offense was in no way attempted to be charged. The amendment stated at most a more flagrant misrepresentation than first alleged. Again, in *People* v. *Donaldson,* 36 Cal. App. 63 [171 Pac. 442], it was held proper to permit the district attorney to amend an information by setting up new and specific pretenses, ancillary to the main inducing cause. We are bound to conclude that the amendments were not improperly al-

lowed, and that appellant could not possibly have been prejudiced thereby, particularly in view of the subsequent continuances which enabled him to thoroughly assemble any additional testimony which may possibly have been made necessary by the amendments.

Counsel relies upon such authorities as *People* v. *Monaghan,* 102 Cal. 229 [36 Pac. 511], to sustain the contention that the failure to re-arraign the appellant after the amendments were filed is fatal error. In the cited case no plea was interposed after the demurrer was overruled and it was held that the cause was never at issue. This is entirely different from the problem confronting us. It is more like the situation presented to us in *People* v. *Dempster, supra,* where the soundness of the contention was denied. There the defendants had plead not guilty to an offense the nature of which was set forth in the indictment. Furthermore, section 952 of the Penal Code (as amended, Stats. 1927, p. 1043), providing that the indictment shall be " . . . sufficient if it contains in substance, a statement that the accused has committed some public offense therein specified . . . Such statement may be made . . . in any words sufficient to give the accused notice of the offense of [with] which he is accused . . . " had not been enacted. Undoubtedly had the amendments been of such a nature as to warrant counsel in seeking to interpose a motion to set aside or a demurrer, the court would have entertained their motion to withdraw the pleas for that purpose. Instead, however, they waived the reading of the amendments and stood upon the pleas already entered. Furthermore, it is not suggested in what manner the appellant was prejudiced. The trial was had in all respects as though the pleas of not guilty to an amended indictment had been interposed. In the case of *People* v. *McCalla,* 63 Cal. App. 783 [220 Pac. 436], no plea at all was interposed on behalf of the defendant corporation and yet (that case being subsequent to the adoption of section 4½ of article VI of the Constitution) the court held that the regularity of procedure did not prejudice the substantial rights of the defendant so as to require a reversal.

Without detailing a considerable mass of testimony it is well to state at this juncture that the evidence discloses a very crude plan for the speedy and unlawful accumulation

of money. The defendants owned quite a number of lots in a comparatively new subdivision in Ontario. Conveyances were made to some person who was agreeable to act as a mere dummy, of one or more lots. The vendee in each instance then signed a note and trust deed, in most cases leaving the name of the beneficiary blank. The defendants, particularly E. I. Bryant, now deceased, advertised the trust deed or deeds for sale, agreeing with the prospective purchaser of the note to make a substantial reduction. Although the prosecution's testimony discloses that the lots were of little value, ranging between $250 and $300, the statement was freely made by E. I. Bryant that the lots had sold for $4,500 apiece; that the purchaser had paid $2,500 in cash and given the note and trust deed for the balance; in one instance it was said that the lot was worth $5,500 and that a deal was pending in escrow for the erection of a large building on it. Similar statements were made to a Mrs. Lou Johnson whose office was on the same floor of the building as that of the defendants for the purpose of securing her to aid them in the disposal of the notes and trust deeds.

This last statement brings us to the point where we may discuss the next contention of appellant. He asserts that the court committed error when it permitted Mrs. Johnson to testify that she had transmitted to the prospective purchaser the representations made by the defendant E. I. Bryant for the purpose of inducing the sale. The objection that these statements were hearsay is not well founded—the witness, employed as an agent for the purpose, and paid a commission, acted only as the vehicle for conveying the information imparted to her by the defendant.

The next objection of appellant requiring notice is to the effect that certain escrow instructions should not have been admitted because at the request of Mrs. Keogh, Mrs. Johnson signed them for and on behalf of the former. Appellant apparently ignores the very potent fact that they were also signed by him. This assertion of error on the part of counsel is on somewhat the same footing and apparently involves the same lack of merit as is obvious in their contention that a check for $1500 was improperly admitted on account of a lack of foundation when subse-

quently in the trial it was stipulated that the defendant E. I. Bryant had received the amount which it was sought to prove he had received by the check.

■ The appellant assigns ten different instances of misconduct on the part of the district attorney. We have carefully examined each of them and find that the court on many occasions advised the jury to disregard the remarks of counsel; that at no time did the deputy who was in charge of the trial make any remarks which could have affected the verdict of the jury without an admonition from the trial judge. In those instances where he failed to advise them, either counsel for the defense failed to ask that the remarks be stricken and the jury admonished, or the remarks were entirely harmless and in keeping with the line of duty of the presecutor. We find no error in any of the assignments.

■ Also the appellant asserts that the judge was guilty of misconduct seven different times during the course of the trial. It is a complete answer to say, assuming that the court made remarks which were not proper, that counsel never at any time called the attention of the judge to the situation or gave him any opportunity to correct the harm if any was done. Furthermore, there is not only no indication that the judge would have refused to avoid all error with its possible effect upon the jury, but there is abundant support in the record for the belief that he would most earnestly have endeavored to prevent any remark of his from influencing the jury in the slightest degree. In fact he told them several times that they were to pay no attention to the discussions between counsel and himself. Nor is there anything to indicate that any irreparable harm was done. Under such circumstances and by virtue of a well-known rule of law, appellant may not be heard to complain.

■ The next point urged by appellant as a ground for reversal is that the trial court erred in the giving and refusal of certain instructions relating to conspiracy. Counsel labor under the misapprehension that a conspiracy may not be proved to exist between two defendants for the purpose of establishing the fact that the act of one in furtherance of the conspiracy is in legal contemplation, the act of both and for which both may be convicted. They

have the erroneous notion that when a conspiracy to commit a criminal act is shown to exist the conspirators may only be convicted of the criminal conspiracy and not of the crime actually committed. Such is not the law. The books abound with cases where conspiracies have been proved and where the jury under appropriate instructions must have found, of necessity, the existence of a conspiracy in order to have returned a verdict of guilty as to one or more of the defendants. It is sufficient for our purposes to make reference to *People* v. *Matthew,* 68 Cal. App. 95 [228 Pac. 417], *People* v. *Ferdinand,* 194 Cal. 555 [229 Pac. 341], and *People* v. *Seitz,* 100 Cal. App. 113 [279 Pac. 1070].

Counsel also urge the refusal of the court to give an instruction which would have had the effect of telling the jury that the testimony of Mrs. Johnson was improperly admitted and that the representation which she repeated or conveyed to two purchasers of trust deeds could not be "considered as against the defendants." What we have already said upon this question in discussing its admissibility disposes of the contention.

█ Counsel also assert that the action of the court in denying probation to appellant was error, and rely upon *People* v. *Jones,* 87 Cal. App. 482 [262 Pac. 361], to support them. In the cited case the District Court of Appeal declared that where the trial judge attempts to deal with the question of whether a particular case or a particular defendant comes within the scope of the probation law, he is then undertaking to deal with a fixed principle of law which may be reviewed on appeal. But it also there stated that where, as in the instant cause, the court gives consideration to the merits of the application, the discretion thus exercised is not governed by the fixed principles of law, but the action rests in the sound discretion of the court and will not be disturbed unless it appears to be capricious or arbitrary.

█ There are a number of other assignments of error, some wholly without merit and many others unsupported by either argument or citation of authority. We have called the attention of the profession to the rule that we are not burdened with the responsibility of undertaking their labors in this regard so frequently of late, that we

now deem it appropriate to say that unless counsel refrain from mere assignments of error without anything of a substantial character to indicate the sincerity of their belief in the error assigned, more drastic measures will of necessity be adopted to put an end to the practice.

Judgment and order affirmed.

Works, P. J., and Craig, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on October 31, 1929.