[Crim. No. 2072. First Appellate District, Division One.—March 23, 1940.]

THE PEOPLE, Respondent, v. H. A. COWAN (True Name ROBERT C. PUTER), Appellant.

Robert C. Puter, *in pro. per.*, and Otto G. Foelker for Appellant.

Earl Warren, Attorney-General, and F. Walter French, Deputy Attorney-General, for Respondent.

WARD, J.—This is an appeal by defendant from a conviction of the crime of forgery, and from the order denying his motion for a new trial. To the charge, defendant had pleaded not guilty and not guilty by reason of insanity.

The information, filed November 4, 1938, alleged the commission of the offense on or about January 19, 1937, also a prior conviction, which the defendant admitted. Subsequent to the commission of the alleged offense and prior to the filing of the information, appellant had been an inmate as an insane person of the Mendocino State Hospital.

On the issue of not guilty, wherein a trial by jury was duly and regularly waived, the defendant originally was represented by counsel. Subsequently, with the consent of the court, the attorney withdrew, following his protest that the defense had been "carried on in a manner not contemplated by me", to which the defendant replied: "Well, I think that I can carry it on competently myself." Evidence was offered of the offense charged, and of other similar offenses. The defendant objected to the questions propounded by the district attorney, and cross-examined the witnesses himself, but otherwise offered no defense to the case presented except the plea of not guilty by reason of insanity, which if proven would affect only the element of criminal intent, although at the conclusion of the evidence presented on behalf of the people in connection with the forgery charge, he requested that a Dr. Rappaport be called as a witness, upon which the trial judge

stated that Dr. Rappaport would be available at the next session of the court to testify upon the issue of not guilty by reason of insanity.

The transcript covering the incidents attending the closing of the people's case reads as follows: "Mr. Puter: No questions. Mr. Chamberlain: The people rest. The Court: The People have rested their case on the plea of not guilty to the offense of forgery alleged in the information. It is now your turn. Put on your case on the plea of not guilty. Mr. Puter: I want to call—. The Court: What do you expect to do? Mr. Puter: I want to establish my insanity. The Court: That is not proper for you to do so at this stage of the trial. You will have a chance at the end of the trial on your plea of not guilty to produce witnesses on your plea of not guilty by reason of insanity. The law says so far as the issue of the checks are concerned you are conclusively presumed to be sane. We finished that part and go to the other part of the trial, in other words on the plea of not guilty by reason of insanity, which is a sort of plea which means you are not responsible for what you did. I will read you the code section in that regard. (The Court reads.) If you want to take the stand yourself now is the time to do it. Then we will go into the other half of the trial. Do you wish to rest your defense on this charge at this time? Mr. Puter: Yes, the defense rests. The Court: Do you want to argue the case at this time? Mr. Puter: No, sir. The Court: Is the matter submitted? Mr. Chamberlain: Yes, your Honor. Mr. Puter: Yes, your Honor.''

Some confusion arises in the briefs relative to the statement made by the defendant in the foregoing excerpt; that is, whether he used the word "insanity" or "sanity". Appellant admits that if the purpose was to establish the "insanity" as of the date of the commission of the offense, the court was correct in denying defendant the right to call Dr. Rappaport before that issue was ready for hearing. ■ Assuming, but not admitting, that the court reporter misunderstood and recorded the word "insanity" instead of "sanity" and that appellant sought to prove his sanity as of the date of the trial, then it was unnecessary to call a witness to prove defendant's sanity upon the not guilty charge, as the defendant was presumed to be sane. (Pen. Code, secs. 1016, 1026.) ■ If the purpose was to engage "counsel, psychiatrists

and handwriting experts'', which appellant claims could not
be done if he was insane, the answer is that theretofore de-
fendant had voluntarily proceeded with the trial of the cause
without the assistance of the legal counsel chosen by himself.
It is not even hinted that Dr. Rappaport, a psychiatrist, could
have been of assistance as a handwriting expert. Subse-
quently Dr. Rappaport was called and was submitted to a
rigorous cross-examination by the defendant personally, who
demonstrated that the absence of counsel did not result in
an unfair hearing or that he was in anywise prejudiced.
Not one word appears relative to handwriting. There is no
claim made that appellant was in fact insane at the time of
the hearing upon either proceeding, except as hereinafter ap-
pears.

About the time of the conclusion of the case on the
issue of not guilty, and before the hearing upon the issue of
not guilty by reason of insanity, the defendant stated: ''I de-
mand an attorney . . . '' Nevertheless, without objection,
defendant proceeded to conduct the trial upon the issue of
not guilty by reason of insanity, wherein the following ap-
pears: ''Mr. Puter: I understand. Before I proceed to tell
the story of my life I will ask if you will allow me to ex-
amine myself? The Court: What do you wish? Mr. Puter:
I am acting as my own counsel. I wish to call the defendant
to the stand and examine the defendant as counsel, acting as
second and first parties, asking myself questions and answer-
ing them. I would like to examine myself personally. . . .
Mr. Puter: Q. Mr. Puter, what is your business? A. Drafts-
man. Q. You are the defendant in this case? A. Yes. Q.
Mr. Puter, please tell the court why you are defending your-
self in this case? A. Your Honor, because I am without ade-
quate funds to appoint counsel and because I desire abso-
lutely to establish the fact of my restoration to competency.
Q. Mr. Puter, why did you not call upon the services of the
Public Defender? A. Because, even though I realize the Pub-
lic Defender would defend me ably, still I have been advised
no attorney would consent to subpoenaing so many witnesses,
and it appeared, without corroboration of past events by wit-
nesses my defense would be misconstrued.'' It seems to us
apparent that the defendant did not in fact desire the services
and counsel of an attorney either in the conduct of the trial
on the forgery charge or in connection with the hearing upon

the insanity plea, but that, as appears from the record, he desired to select an attorney who would agree to subpoena one hundred and thirty-five witnesses from the county and elsewhere. The attitude of the defendant was the equivalent of a declination of counsel, or at least a waiver thereof. (*People* v. *Rocco*, 209 Cal. 68 [285 Pac. 704].)

When the case in chief had been disposed of defendant requested a jury trial, but a jury had theretofore been waived and the court used its discretion in denying the request. The trial, based upon a denial of the accusation by a plea of not guilty, together with a confession and avoidance by a plea of not guilty by reason of insanity (*People* v. *Leong Fook*, 206 Cal. 64 [273 Pac. 779]), may combine two issues, nevertheless any separation is one of form and not of substance. In *People* v. *Troche*, 206 Cal. 35 [273 Pac. 767], treating a similar question, though in that case both issues were tried by a jury, the court, at page 48, said: ''The trial had by the defendant, under the present law, amounted to one trial, and no more. The defendant was charged with the commission of but one crime, and his pleas to the one accusation, constituting his answer and defense, tendered the issues for investigation by the court and the jury selected to try the case.'' (See, also, *People* v. *Love*, 21 Cal. App. (2d) 623 [70 Pac. (2d) 202]; *People* v. *French*, 12 Cal. (2d) 720, 765 [87 Pac. (2d) 1014].) In the instant case, a trial by jury had been voluntarily and regularly waived. ''In cases where a jury trial may be waived in a criminal case, a waiver once voluntarily made cannot afterwards be withdrawn on the trial, except in the discretion of the court.'' (35 Cor. Jur., Juries, sec. 140, p. 222.) We cannot say under the circumstances of this case that there was an abuse of discretion on the part of the trial judge.

On appeal, defendant represented himself in the filing of opening and closing briefs; subsequently he was represented by counsel in the filing of a ''supplemental brief''.

With reference to his request that Dr. Rappaport be called in connection with the issue of not guilty, appellant contends that regardless of the nature of the testimony sought to be elicited from Dr. Rappaport relative to this issue, it was none the less his right to call the witness prior to the hearing on the issue of not guilty by reason of insanity.

■ It is appellant's claim that, having been committed as an insane person and having been released from the asylum, he was entitled to know that he had been discharged as sane before being placed on trial on a felony charge, and that the district attorney was remiss in his duty in neglecting to inform appellant that he had been discharged from the hospital as sane. Our attention has not been called to any statute or rule requiring such action on the district attorney's part, but the district attorney actually introduced as an exhibit upon the hearing a certificate of appellant's discharge from the hospital. Appellant now objects that it was filed too late to be of advantage to him. Regardless of the time of its filing, the certificate would not have *per se* proven that appellant was legally insane at the time of the commission of the offense charged in the information. It could be considered, if at all, as indicative only that appellant was medically insane, which, standing alone, affords no reasonable inference that he did not appreciate the nature and quality of his act or could not distinguish right from wrong, and would not be sufficient to establish legal insanity at the time of the commission of the offense. (*People* v. *French, supra.*) In *People* v. *Willard,* 150 Cal. 543, 553, 554 [89 Pac. 124, 128], the court said: "There are many kinds and degrees of insanity, and it is not every kind or degree which will relieve a person from such responsibility, and the degree of mental impairment which would authorize his confinement in an asylum for the insane may be entirely different from the degree of mental derangement which will relieve him from responsibility for his criminal acts. A person may be partially insane, or be insane upon one or several subjects, and for that reason be a proper person for confinement in a state insane asylum to be cared for and treated for his mental disorder, and yet at the same time such person may be perfectly sane upon all other subjects and entirely responsible under the law for a criminal act committed by him." It is an erroneous assumption that the method of release is a pronouncement of legal sanity. The complete answer is that the certificate of discharge would, upon his application, have been available to appellant before the trial on the felony charge.

■ It might be claimed that it was the duty of the court upon its own motion to halt the hearing and proceed under the provisions of sections 1367 and 1368 of the Penal Code.

The transcript shows that appellant, addressing the court, said: "At this time I would like to make a motion that the proceedings in this trial be discontinued on the ground that the defendant has not yet been legally restored to sanity. I have not had any documents of any kind read to me telling that my sanity has been restored. . . . Your Honor, if the case proceeds it proceeds on my objection that the proceedings are incompetent, irrelevant and immaterial, and on the ground that the defendant who is being tried is still legally insane, that he has not been declared legally sane." It is not claimed that appellant predicated his motion to discontinue the proceeding upon the ground that he was in fact insane at the time of trial, but rather "that he has not been declared legally sane". The trial court had an opportunity to observe the appellant and to determine whether or not his manner, actions and conduct of his own case warranted proceedings under section 1368 of the Penal Code. It is presumed that the court performed its duty. (Code Civ. Proc., sec. 1963.) A reading of the cold record indicates that appellant conducted the trial in a manner calculated to protect his rights both under the law and the facts.

Appellant admits the right and power of the court to limit the number of witnesses whose testimony is cumulative, and it is conceded that he "would not have needed 135 witnesses to prove his insanity on the day in question", but it is claimed that the court should not have foreclosed appellant of his right to call other witnesses from outside the county. The court approved the issuance of certain subpoenas to residents of the county. Ten witnesses actually appeared and testified. After discussion with the court relative to the number of witnesses to be called, the following appears in the transcript: "Mr. Puter: That is all that is necessary then. If you give me permission to give my life history before these three alienists you have mentioned and have the information exhibited to them I will be glad not to call the other witnesses. . . . The Court: I am going to let you go on the witness stand and tell all about your injuries, your activities and have the doctors look them over. Mr. Puter: I would not ask a greater privilege than that." If the trial court abused its discretion—which we cannot hold—nevertheless appellant waived the calling of further witnesses. In the brief, presumably written and signed by appellant, it is claimed that

''appellant immediately displayed his total incompetence to act as his own counsel by asking subpoena of one hundred and thirty-five witnesses''. Appellant does not contend that he proved his insanity, or that the evidence was insufficient to prove him legally sane, but that the court committed errors which prevented a proper presentation of his insanity defense.

Appellant was committed by the Superior Court of the City and County of San Francisco to Mendocino State Hospital under the ordinary psychopathic procedure (see Welfare and Institutions Code, div. VI, pt. 4, arts. 8 and 9) rather than under the provisions of Penal Code sections 1026 or 1368. He now contends that the discharge under the former procedure deprived him of civil restoration to capacity. Either mode of discharge would not abridge the right of the state to place him upon trial on the forgery charge contained in the information filed in Alameda County and the evidence does not indicate that in fact appellant was precluded by the method of his discharge from engaging an attorney, or handwriting expert, on the felony charge, nor the assistance of psychiatrists in the presentation of any claim of insanity upon the date of the commission of the offense, nor from a proper presentation of his insanity defense in any respect.

Before the submission of this case on appeal, appellant filed an ''Application for leave to submit additional evidence that existed prior to and after judgment and which materially affects the substantial rights of the appellant in determination of this appeal.'' An affidavit was filed in support of such application, to which the following documents were attached, certified copies of: a plea entered in the Superior Court of the City and County of San Francisco, to an alleged separate and distinct offense from that in the present charge; an order directing the detention of defendant in a hospital for observation; an order of commitment; the dismissal of the action one year later; a copy of a petition presented to said superior court for a writ of *habeas corpus* and an application for legal restoration to sanity; appellant's discharge from the Mendocino State Hospital, signed by the medical superintendent prior to the dismissal of the San Francisco case, and an affidavit attached to a list of 135 names of persons whom appellant desired subpoenaed in this case. This list was presented to the trial court and has been heretofore referred to. An affidavit alleging insanity filed by the

sister of appellant, the warrant of apprehension, the commitment, and the discharge indicating recovery from psychosis, that is, from any mental derangement, were received in evidence, marked as exhibits and have been considered upon appeal. The plea to the information upon a similar charge in another county, the order of detention for observation and the petition for *habeas corpus,* as evidenced by the title alone, are not pertinent and could not have assisted in proving insanity upon the date of the alleged commission of the present offense or at the resulting trial in view of the introduction as an exhibit of the commitment and the order dismissing the information in another county.

In the supplemental brief of appellant, filed by an attorney under an authorization to take such steps as might be necessary in prosecuting the appeal, it is contended that this court's power to hear additional evidence finds support in the provisions of section 956a of the Code of Civil Procedure and those of rule XXXVIII of the Rules for the Supreme Court and the District Courts of Appeal.

Rule XXXVIII is a procedural method outlining the steps necessary to the requirements of section 956a. When a jury trial is not a matter of right, or where a jury has been waived (art. VI, sec. 4¾ of the Constitution of the State of California), the court to which the matter has been appealed may make findings of fact contrary to, or in addition to, those made by the trial court. (Code Civ. Proc., sec. 956a, *supra.*) This power is given only when such findings would constitute a basis for an affirmance on appeal, or for a reversal when the appellate court would be justified in reversal, with directions to the trial court to enter judgment for appellant. (*Tupman* v. *Haberkern,* 208 Cal. 256 [280 Pac. 970].)

The constitutional provision and the code section do not apply to criminal cases. This is demonstrated by the fact that section 1 of the Code of Civil Procedure divides that code into four parts. Section 956a appears in part II of that code, entitled ''Civil Actions'', under title XIII, ''Appeals in Civil Actions'', chapter I. The constitutional amendment was proposed in 1925 (Stats. 1925, chap. 55, p. 1380) and adopted in 1926. Section 956a was passed, approved and became effective in 1927. (Stats. 1927, chap. 352, p. 583.) The Constitution, prior to amendment, provided that ''a trial by jury may be waived in all criminal cases not amounting

to felony, by the consent of both parties, expressed in open court". (Const. 1849, as revised in 1879, art. I, sec. 7.) In 1928, this section of article I of the Constitution was amended by the people under a constitutional amendment submitted by the legislature (Stats. 1927, chap. 60, p. 2367) by striking out the words "not amounting to a felony", and the right conferred to waive a trial by jury in a criminal case if consent was "expressed in open court by the defendant and his counsel".

At the time of the adoption of section 4¾ a jury trial on a felony charge could not be waived and hence that section did not have reference to criminal cases. The provisions of section 4¾ of article VI are not self-executing. (*Tupman* v. *Haberkern, supra.*) If it be assumed that the power to take additional evidence in criminal cases, even on special verdicts (Pen. Code, sec. 1152) could be conferred on appellate courts, the answer is that the legislature has not seen fit to do so. The existing legislation has limited that power to civil cases.

The application to submit additional evidence is denied. The judgment of conviction and the order denying a motion for a new trial are affirmed.

Peters, P. J., and Knight, J., concurred.