[Crim. No. 4319. Second Dist., Div. Two. July 1, 1949.]

THE PEOPLE, Respondent, v. RUTH COLTON et al.,
Defendants; JOHN F. HALL, Appellant.

Brennan & Cornell for Appellant.

Fred N. Howser, Attorney General, and Henry A. Dietz, Deputy Attorney General, for Respondent.

WILSON, J.—Defendants were charged in an indictment returned by the grand jury of Ventura County with grand theft in seven counts—the stealing of various sums of money from the Bank of Hueneme. Both defendants pleaded not guilty and waived trial by jury. The court found both guilty under the count charging the theft of $110,000, and the other six counts were dismissed. Mrs. Colton was placed on probation and Hall was sentenced to the state prison. He has appealed from the judgment of conviction.

Defendant Hall assigns as error the denial by the court of his motion to withdraw his waiver of a jury trial. On September 23, 1948, both defendants entered pleas of not guilty. The trial was thereupon set for October 25, and the court ordered a venire of 100 jurors to be drawn for the trial. On October 19, defendants, with their respective counsel, appeared in court, waived a jury trial and consented that they be tried by the court. The district attorney joined in the waiver. The date of trial was then changed by consent of all parties from October 25 to November 3. Each defendant, each of their attorneys and the district attorney, was specifically and separately asked by the court whether they respectively waived a jury and consented that the cause be tried by the court. Each answered in the affirmative. Thereupon the court vacated the previous order directing a venire of 100 persons to be summoned as jurors. On November 3, when the case was called for trial, defendant Hall's attorney moved to set aside the waiver and requested that he be tried by a jury. Upon objection by the district attorney the motion was denied and the cause proceeded to trial by the court.

"A trial by jury may be waived in all criminal cases, by the consent of both parties, expressed in open court by the defendant and his counsel, . . ." (Const., art. I, § 7.) When a trial by jury has been voluntarily and regularly waived the waiver cannot afterward be withdrawn except in the discretion of the court. (*People* v. *Cowan*, 38 Cal.App.2d 144, 149 [100 P.2d 1079]; 35 C.J. § 140, p. 222; 50 C.J.S. § 111(b), p. 825.) Under the circumstances above related the court did not abuse its discretion in denying defendant's motion to withdraw his waiver of a jury trial.

 Defendant Hall contends that the evidence is insufficient to sustain the judgment in that it does not establish a felonious intent—a specific intent to steal or permanently to deprive the bank of ownership or possession of the money.

Defendant was the sole owner of John F. Hall Publications, a corporation having its principal place of business in the city of Hueneme, and editor and publisher of three rural newspapers, including the Port Hueneme Herald-Express. He opened his first account with the bank early in 1941. Mrs. Colton was employed by the bank in January, 1943. She had had no previous banking experience and no education along commercial lines. She soon became a teller and in 1945 was made assistant cashier. As such she supervised the bookkeeping department, the tellers, escrow work and the making of loans. Her immediate superior was Mr. Elmer Green, vice-president and cashier of the bank. In his absence Mrs. Colton was in charge of the bank. She was authorized to grant loans up to the amount of $500. Some customers, who had a good credit rating, were entitled to substantial loans, but when Mrs. Colton made such loans she consulted with Green or with the president or a director of the bank. In September, 1947, the maximum unsecured loan that could legally be made by the bank to one borrower was $11,250. Prior to July, 1947, on a few occasions Hall gave the Bank of Hueneme checks on other banks which were returned marked "not sufficient funds." When a check was so returned he would give the bank another check to cover it. Hall sought bank loans from Green on several occasions and in September, 1947, applied for a loan of $15,000 which Green refused to make, although Hall said he was in desperate need of the money. Hall made no further requests of Green either for loans or overdraft and made no arrangement for credit with the bank.

On August 25, 1948, Green, upon checking the reserve cash in the vault to determine whether they needed to order

additional money, discovered a shortage of $22,000 in Mrs. Colton's cash. She was not at the bank and he telephoned her of the shortage and asked her to come to the bank. Before going she telephoned Hall and told him Green knew about the deficit, thinking he knew of the entire shortage, which was then $110,000. When she arrived at the bank she found Green knew only of the $22,000. She told Green she had taken that amount out of cash and turned it over to Hall. She then talked to Hall who told her the money would probably come within a day or two and asked her to postpone telling the whole story because he could not then get the $22,000. Green telephoned to Hall and demanded that he raise the money and pay it to the bank on that day. Hall could not obtain the money and, on Green's demand, he and the secretary of his corporation executed a chattel mortgage to the bank for $22,000 covering some of the equipment belonging to the company. When accused by Green of wrongdoing in thus involving Mrs. Colton, Hall made no reply. The chattel mortgage was taken as an emergency measure as evidence of the indebtedness. Green had no knowledge of what assets Hall had. The note and mortgage were not taken as security for a loan.

Mrs. Colton maintained that the shortage was only $22,000. When she was confronted with deposit slips in her handwriting and was asked their meaning she said she might as well tell the whole story and revealed the entire defalcation to be $110,000, and that Hall had received the entire amount.

Mrs. Colton accomplished the shortage by various means —at one time importing shipments of currency for various amounts from Security-First National Bank and crediting the bank with less than the amounts received; she had placed the money in the various accounts of Hall by drawing checks on the bank; many times when there were not sufficient funds in the account to cover his checks she took money and deposited it in his account and charged the checks to the account; on some occasions she intercepted checks and did not charge them to Hall's account; she took to her home the checks that she had intercepted. Hall was having an audit made of his books and upon asking her for the checks she delivered them to him. At the time Mrs. Colton was talking with Green the checks were in Hall's possession but they were later recovered.

Mrs. Colton's accounts were immediately audited and the

shortage of $110,000 was ascertained. The evidence shows in detail the several amounts making up the deficit and the manner in which the checks and the money were handled.

Mrs. Colton testified that in July she had Hall's checks in an amount between $15,000 and $19,000 which he said he would make good but he did not do so. She went on her vacation for two weeks and when she returned she found the checks still remaining unpaid. She called Hall by telephone and saw him every day in reference to the checks and went to his home and talked to him and his wife about the matter but without result.

Hall and Mrs. Colton functioned together in such a manner that their operations constituted a conspiracy to defraud the bank. The acts of one were the acts of the other. Her manipulation of Hall's checks, her false entries in the bank's books and in her own cash account, the "kiting" of checks, and other means used by her to conceal the truth of Hall's account with the bank, and his financial condition, which was well known to both defendants, establish a felonious and specific intent to deprive the bank permanently of its money. Hall knew Mrs. Colton was paying his checks in excessive amounts over his cash balance; he knew his own financial situation and his lack of funds to repay the amounts he had received through his issuance of such checks. Hall's evidence that he considered the $110,000 as a loan and that he intended to pay it is confuted by the established facts. His spurious contention in that regard is repelled by his knowledge of the limited loaning capacity of the bank, of which he was told when he applied to Green for the loan of $15,000, and by his failure to make any further applications for loans. Moreover, Mrs. Colton's repeated demands that he provide money with which to pay the checks she held, for which there were not sufficient funds, and the amounts he had received through the devious methods above described, show clearly that he did not consider the amount to be a loan. By imposing upon Mrs. Colton's friendship he was able to induce her to advance small amounts at first but the deficit grew until she was so deep in the mire that the situation was beyond control.

Hall knew Mrs. Colton was using the bank's money for his benefit in an illegal manner, and since he was a party to her felonious acts he cannot escape the consequences. His intent is shown by his actions during the months when the defalcation was being built up rather than by the words coming from him while a witness in his own behalf seeking to escape

the penalty for his nefarious transactions. ▮ Further-more, his intent to repay the money is not a defense. An agent of a corporation cannot take its money which has been en-trusted to him or over which he has control as such agent and use it even temporarily for his own personal benefit and avoid criminal responsibility by calling it a loan (*People* v. *Talbot*, 220 Cal. 3, 14 [28 P.2d 1057]), and the fact that the person who fraudulently appropriates such funds intends to restore the money does not avail as a defense if it has not been restored before information laid or indictment found charging the embezzlement. (*Idem.*, p. 15; Pen. Code, § 512; *People* v. *Jackson*, 138 Cal. 462, 464 [71 P. 566]; *People* v. *Harris*, 100 Cal.App. 78, 81 [280 P. 178].) ▮ But Hall maintains that even though Mrs. Colton is criminally liable under the rule above stated his conviction cannot be sustained because he was not in a relation of trust or confidence or con-nected in any manner as officer, employee or otherwise with the bank. The evidence shows that he conspired with Mrs. Colton in obtaining the money from the bank which she placed in his several accounts and which was drawn therefrom by his checks. He was directly connected with her in the commis-sion of the crime and advised, encouraged and connived in its commission. He is therefore a principal in the crime and punishable as such. (Pen. Code, § 31; *People* v. *Fronk*, 82 Cal.App. 465, 468 et seq. [255 P. 777]; *People* v. *Zimmer*, 23 Cal.App.2d 581, 585 [73 P.2d 923]; *People* v. *Kelly*, 69 Cal.App. 558, 569 [231 P. 767].)

▮ Contrary to Hall's contention, the money received by him through Mrs. Colton's assistance and manipulations was not a loan from the bank and could not have been con-sidered by him as such. He knew for approximately a year he had not had sufficient funds in the bank to meet his checks; he knew a previous application to Green for a loan had been refused and he did not again apply; he knew Mrs. Colton was using funds of the bank without authority and was falsifying its records to conceal her actions from other officers of the bank. It is fallacious to contend that the depositing of a check in a bank operates as an application for a loan in a case where the person issuing the check is a coconspirator with an officer of the bank in the commission of a fraud. (*People* v. *Talbot, supra*, p. 14.)

Hall contends that since Mrs. Colton was his accomplice it was necessary that her testimony be corroborated and that no corroboration appears in the record. ▮ Evidence is

sufficient to corroborate that of an accomplice, even though circumstantial and slight, if it tends to connect the defendant with the commission of the offense. ▮ Corroborating evidence need not be sufficient to establish by itself, and without the aid of the testimony of the accomplice, that the defendant committed the offense charged. (*People* v. *Negra,* 208 Cal. 64, 69, 70 [280 P. 354] ; *People* v. *Trujillo,* 32 Cal.2d 105, 111 [194 P.2d 681] ; *People* v. *Tinnin,* 136 Cal.App. 301, 305 [28 P.2d 951].) ▮ Corroborating evidence is sufficient when it tends to connect a defendant with the commission of the crime in such a way as may reasonably satisfy the trier of facts that the accomplice is telling the truth, and it is not necessary that the accomplice be corroborated as to every fact to which he testifies. (*People* v. *Trujillo, supra.*)

▮ Mrs. Colton's testimony is corroborated by the evidence of these facts: Hall had attempted to obtain a loan from Green which was refused because the amount was more than the loaning capacity of the bank for unsecured loans; he did not apply for a loan after that refusal; his checks remained in Mrs. Colton's possession uncancelled; his checks were "kited," as shown by the examination made by an auditor sent by the Security-First National Bank; for a period of several months he did not have sufficient funds to cover his checks; Mrs. Colton placed money in his account with his knowledge so that his checks might be paid; the bank's funds were used for his personal benefit; he signed individually or as an officer of his corporation all checks that were paid with the embezzled funds of the bank; he kept no books or records; when he employed an auditor it became necessary to construct a set of books and for the purpose of so doing he obtained from Mrs. Colton the checks which she had taken to her home; he was in arrears with the bank in the sum of $110,000. All the foregoing facts were at all times within Hall's knowledge. Such evidence is more than sufficient to corroborate Mrs. Colton's testimony and to sustain defendant's conviction.

Judgment affirmed.

Moore, P. J., and McComb, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 28, 1949.