[Crim. No. 5628.   Second Dist., Div. Two.   Oct. 18, 1956.]

THE PEOPLE, Respondent, v. WILLIAM COBURN
WILLIAMS, Appellant.

Thomas Higgins, Jr., and Harold J. Ackerman for Appellant.

Edmund G. Brown, Attorney General, and Norman H. Sokolow, Deputy Attorney General, for Respondent.

ASHBURN, J.—Appellant Williams and five others (Davidson, Thomas, Welker, Kidwell and Young) were convicted by a jury upon two counts of grand theft accomplished through embezzlement of funds held by them as trustees of an express trust. The court denied their motions for new trial, suspended further proceedings and granted probation. Williams appeals from the judgment (i.e. order granting probation; Pen. Code, § 1237, subd. 1) and from order denying his motion for new trial. The other defendants have not appealed.

Under a labor agreement made by Lathing Contractors Association of California and Lathers Local Union 42A, a trust known as Lathers Welfare Fund was created to administer certain ''fringe benefits'' conferred upon the workers, chiefly group insurance; the moneys were supplied by contributions of employers made in lieu of increase in wages. A written declaration of trust was made in July, 1952, and three trustees were appointed by the union and three by the association. Defendant Williams, a contractor, was appointed by the association. The trust instrument does not specifically provide any compensation for the trustees' services but does call for reimbursement of their expenses. Under an express grant of power to adopt necessary rules and regulations the trustees resolved that each should be paid $20 for attend-

ance upon a board meeting and $3.75 per hour for other time spent on the business of the trust. The board resolution specified that each trustee "should keep a record of the time spent and the work performed" and "submit to the Board of Trustees a statement of the time and work performed." The trustees were paid at the prescribed rates for a while, but no written record or statement was ever submitted as a basis for payment. Near the end of 1953 the trustees paid themselves $2,500 each as compensation to date. By 1954 receipts exceeded disbursements of the trust and defendants entered into a series of abstractions which brought about the indictment.

A tax reserve of $16,371.18 had been set up in a savings account of the trust but the government ruled in April, 1954 that the trust was exempt, whereupon the trustees drew said sum out of the bank and split it six ways, $2,728.53 each, putting it through the books as compensation for services performed. This was the subject of count I of the indictment.

In July, 1954 trust funds in the amount of $414.96 were expended for six automatic wrist watches, one for each trustee. It was handled on the books as compensation for services. This gave rise to count II of the indictment.

On September 16, 1954, a refund or "dividend" was received from West Coast Life Insurance Company in the sum of $2,816.70. Defendant Kidwell took possession of the check in San Francisco, brought it home, endorsed it and purchased six cashier checks, one for each defendant, in the sum of $469.30. The bookkeeper and accountant, whose business it was to record all transactions on the books of the trust, were told nothing and knew nothing about the receipt or expenditure of this sum. The books do not reflect the transaction in any respect, nor do the minutes of the trustees. It had been discussed by them previous to its receipt and counsel for defendant stipulated at the trial that each defendant received his check. This transaction caused count III of the indictment.

On September 24, 1954, California Physicians Service paid the trust $7,862.47 on account of a cancelled policy. The check for same was delivered to the trustees at one of their meetings. It was not deposited as required by the trust instrument, but was cashed by Kidwell and Thomas (who had authority with the bank to endorse checks), and the proceeds were used to buy six cashier checks, one to each trustee for $1,310.26. No information about this matter

was given to the bookkeeper or accountant; the books and the minutes contain no entries or information concerning same. Hence, count IV of the indictment.

The jury acquitted all defendants on counts I and II, and convicted all on counts III and IV.

The trust accounts disclose (after giving effect to the $2,816.70 and $7,862.47 items) that each of the trustees other than Welker received on and before January 14, 1955, by way of asserted fees, $9,358.09; that Welker received $9,418.09. The total receipts of the trust were $244,719.14, which exceeded costs by $121,863.38. There was a bank balance of $47,438.11, leaving $74,425.27 out of which the trustees took a total of $57,840.15. This last figure exceeds 23 per cent of the total receipts.

Appellant says that the prosecution did not prove that defendants did not render services worth the amount of the money received. ■ A trustee whose agreement does not expressly provide for compensation for services is not entitled to any until same has been approved and allowed by a court,—in an instance such as this, a court of equity. (*Fernald* v. *Lawsten*, 26 Cal.App.2d 552, 565 [79 P.2d 742]; 90 C.J.S. § 408, p. 763; 54 Am.Jur. § 527, p. 417.) ■ When he takes without such approval large sums which on their face are disproportionate to services normally to be expected, and handles the withdrawal in a manner contrary to established practice and in stealthy secrecy, he raises an inference of guilt and consciousness of guilt on his part. Moreover, when facts raising that inference have been shown and he takes the witness stand to explain and fails as miserably as did the defendants at bar, he thereby furnishes evidence corroborative of the state's claim.

Counsel make certain contentions applicable to Williams alone. ■ It is argued that although there is proof that Williams got a $1,310.26 check, it was not shown that he ever endorsed or cashed it. He refunded that exact amount to the trust after he had been interviewed in the district attorney's office. That is enough evidence that he had previously received it.

■ It is said that, although he received the check for $469.30 (out of the West Coast refund), he did not endorse or cash it; and the exhibit so indicates. But it is a cashier's check, which fact connotes a withdrawal of that amount from the trust fund; it is still outstanding. In other words, that sum was embezzled from the trust fund and taken into the

possession of defendant Williams. What he later did with it is of no consequence. An intent to return it to the trust (if one be assumed to have existed) or a later restoration would not affect the fact of a completed embezzlement. (Pen. Code, § 512; *People* v. *Colton*, 92 Cal.App.2d 704, 710 [207 P.2d 890].)

While the evidence does not single Williams out for separate consideration except at a few points, it establishes clearly a conspiracy between the six trustees to appropriate to themselves the excess funds of the trust and a continuous course of conduct pursuant thereto. Williams therefore is responsible as a principal for everything done by his coconspirators, and the fact that a conspiracy was not alleged in the indictment is immaterial. (*People* v. *Bryant*, 101 Cal.App. 84, 90 [281 P. 404]; *People* v. *Terrell*, 138 Cal.App.2d 35, 54 [291 P.2d 155].) Even if it were established that the defendant Williams did not receive his share of the $2,816.70 and $7,862.47 abstractions and that the proof was $1,779.56 ($469.30 plus $1,310.26) short of the amount charged in counts III and IV of the indictment, that variance would not impair the integrity of the verdict against all the conspirators. (Pen. Code, § 1131; *People* v. *Gray*, 66 Cal. 271, 277 [5 P. 240].)

Defendant Williams took the stand in his own behalf but confined his testimony to a denial of Mr. Gomes' testimony that he, Williams, had said he wanted to plead guilty. The defendant's testimony comprises but one page of a 706 page transcript. His failure to explain or to attempt to explain the other direct and indirect evidence against him is persuasive of the truth of the evidence of the prosecution. (*People* v. *Ashley*, 42 Cal.2d 246, 268 [267 P.2d 271]; *People* v. *Goldstein*, 136 Cal.App.2d 778, 791 [289 P.2d 581].)

''It should also be borne in mind in passing on the sufficiency of the evidence to sustain a conviction that, before a reversal may be had, it must be made clearly to appear that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the court below. (*People* v. *Newland*, 15 Cal.2d 678, 681 [104 P.2d 778].) We must assume in support of the judgment the existence of every fact which the trial court could have reasonably deduced from the evidence, and then determine whether the facts 'justify the inference of guilt.' (*People* v. *Deysher*, 2 Cal.2d 141, 149 [40 P.2d 259].) If the circumstances reasonably justify the determination of the trier of fact, the opinion of the

reviewing court that those circumstances might also reasonably be reconciled with the innocence of the defendant will not warrant a reversal. (*People* v. *Newland, supra; People* v. *Gould,* 111 Cal.App.2d 1 [243 P.2d 809].) '' (*People* v. *Frankfort,* 114 Cal.App.2d 680, 689 [251 P.2d 401].)

The trial judge in ruling upon the motion for new trial said: "I just can't conceive how anybody can be involved in as brazen an embezzlement as I have ever seen, and still maintain that they didn't do anything wrong. I can't understand it. Every opportunity that they had to cut a melon six ways, they did. They not only did that, but they went down and bought six wrist watches for themselves." He did not overstate the matter. One of the conditions of Williams' probation is restitution of $4,575.89 (subject to a credit of $1,310.26 upon a showing of that amount having been received by the trustee of the welfare fund). This is only $1.36 short of one-sixth of the total alleged to have been embezzled in the four counts of the indictment. It indicates a belief of the trial judge that defendants were guilty of all the charges. Certainly the evidence sustains such a conclusion.

"It is not the province of a reviewing court to present a detailed argument on the sufficiency of the evidence to support the findings where it appears that the question is one purely of determining which side shall be believed. The trial court having determined this with the witnesses before it, the controversy is settled." (*Sonkin* v. *Hershon,* 130 Cal.App. 2d 491, 492 [279 P.2d 156].)

It is argued that there was error in refusal of three requested instructions concerning the right of trustees to compensation for their services. Two of them are manifestly inapplicable. The other is as follows: "You Are Instructed that the trustees of a trust are entitled to compensation for services when such compensation is based upon fairness and justice, and said compensation is just and reasonable." Insofar as it correctly states the law, it was adequately covered by the following portions of instructions which were given: ". . . Thus in the crime of theft by embezzlement, a necessary element is the existence in the mind of the perpetrator of the specific intent to fraudulently appropriate trust funds to a use and purpose other than that for which said funds were intrusted, and, unless such intent so exists, that crime is not committed." "Upon any indictment for embezzlement, it is a sufficient defense that the property was appropriated

openly and avowedly, and under a claim of title preferred in good faith, even though such claim is untenable. . . ." It was doubtless on this theory that the defendants were exonerated of the charges of counts I and II. If there were error in the refusal of the proffered instruction it could not be said to have worked a miscarriage of justice.

The judgment (order granting probation) and order denying new trial are affirmed.

Moore, P. J., and Fox, J., concurred.