[Crim. No. 8955. Second Dist., Div. Three. June 16, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. NICHOLAS RALPH BOULAD, Defendant and Appellant.

120

Nicholas Ralph Boulad, in pro. per., and Morris Lavine, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk and Thomas C. Lynch, Attorneys General, William E. James, Assistant Attorney General, and William L. Zessar, Deputy Attorney General, for Plaintiff and Respondent.

THE COURT.—The defendant Boulad and Bruce Terry Coggeshall were accused of the crime of robbery. Coggeshall pleaded guilty to the offense of robbery of the second degree. In a nonjury trial the defendant Boulad was found guilty of robbery of the second degree. He has appealed from the judgment.

At the trial it was stipulated that the People's case would be submitted upon the transcript of the testimony taken at the preliminary hearing, the People and the defendant each reserving the right to present additional testimony.

Dick Gordon testified that he was the store manager of Dale's Food Market in Van Nuys. On August 26, 1962, about 7:45 p.m., he and a clerk, Steve Rose, were waiting on customers at the checkstands. Bruce Coggeshall drew a revolver from his pocket and pointed at a cash register. Coggeshall took the currency out of the till. He then took money out of another cash register which the clerk had been using. Coggeshall then left the store. Mr. Gordon further testified that he

gave Coggeshall the money because he was frightened. At the time of the incident Coggeshall was wearing dark glasses.

Another witness testified that he lived "right behind the market." On August 26, 1962, at about 7:45 p.m., while he was talking to a neighbor, he observed an automobile come out of the parking lot and go into the alley behind the market. A few minutes later it was driven out and parked beside a vacant building. Then it was moved again and parked on the opposite side of the street. The defendant Boulad got out of the vehicle and walked back towards the market. Several minutes later a second man, whom the witness believed to be Coggeshall, left the car and walked back toward the market. Soon Boulad returned and reentered the car. He sat behind the driver's wheel. Thereafter Coggeshall ran back in front of the witness' house and jumped into the car, which was driven away at "a high rate of speed." The witness further testified that Coggeshall wore dark glasses.

A police officer testified that, after hearing a police radio broadcast as to the robbery, he arrested the defendants at the rear of a gasoline service station at approximately 8 p.m. on August 26. Money was "sticking out" of the sport coat being carried by Coggeshall, who emerged from the restroom. It was in the amount of $481. In his pants pocket was approximately $261.

At the trial Bruce Coggeshall was called as a witness on behalf of the defendant Boulad. He testified that he went into Dale's Market to purchase some articles. Then he "realized certain financial problems" he had and "a thought occurred" to him "to rob the people," which he proceeded to do. He used a toy gun. Boulad was not with him but was in Boulad's car which was "stopped" on a side street. Prior to the time he entered the market he had no conversation with Boulad about committing any crime there. While they were driving away Boulad asked him where he had obtained "all that money" and Coggeshall did not answer him. Boulad then said, "I sure hope it is not what I think it is." Coggeshall told him, in substance, to forget it. He had known Boulad for two or three weeks and had been with him for four or five hours that day. On cross-examination, the witness stated that he had suffered a prior conviction for the crime of robbery.

The defendant Boulad testified in his own behalf. He parked his car about half a block or a block away from the market. Then he got out and went to the restroom in a service station which was across the street. Coggeshall left about the same

time and was gone approximately five minutes. After Cogge-shall returned, they had a conversation which was related by the defendant as follows: "Well, after we left this area where this market was robbed, I would say it was five, ten, twelve, somewhere in there, I noticed that he had a lot of money stuck in his coat pocket, and I asked him where he got the money. He didn't answer me. So I think I asked him twice. I said, 'I hope it isn't what I think it is,' or something of this nature, but I didn't get any reaction." Prior to the time when they arrived in the area of the market he had had no conversation with Coggeshall about a robbery or the commission of any crime. Coggeshall gave him no reason for wanting to stop there. The defendant Boulad further testified that he had been drinking most of the day. He had had about 10 or 12 drinks. On cross-examination, the defendant Boulad testified that he had suffered prior felony convictions, one being in 1949 for second degree robbery.

██ The defendant Boulad contends that the evidence was insufficient to support the determination of the trial court that he was guilty of the offense of robbery. ██ The governing law is stated in *People* v. *Silva,* 143 Cal.App.2d 162, at page 169 [300 P.2d 25], as follows: "One who stays in an auto-mobile and enables those who are robbing to make a successful 'getaway' is as much a principal and aids and abets the crime as though he were present and assisted in the actual taking of the property . . . . ██ The question of whether or not a person who was present at the time and place of the commission of a crime has aided and abetted therein is one of fact for the trier of fact to decide from all of the circumstances proved."

██ That the defendant Boulad's contention is untenable is clear from a review of the evidence. The trial judge, in his performance in the nonjury trial of his function of deter-mining the credibility of the witnesses, was not bound to accept the explanation of Boulad's actions given by the de-fendant Boulad and by his companion, Coggeshall. The cir-cumstances disclosed by the evidence, including Boulad's activity in moving his automobile from place to place in the vicinity of the market and the manner in which he drove away when Coggeshall returned to the car after the robbery, were sufficient to warrant the trier of fact in drawing the inference that Boulad knew Coggeshall's purpose in entering the market and that he aided and abetted Coggeshall in the commission of the robbery.

██ The other contention of the defendant Boulad is that

there was prejudicial error in the course of the proceedings in that no waiver of the defendant's right of trial by jury was made before the judge who tried the case, although the defendant had waived such right before another judge of the court at an earlier stage of the proceedings.

When the case was called for trial before Judge Mackin on December 20, 1962, the defendant Boulad waived his right to trial by jury.[1] The case, however, was not then tried but, on the defendant Boulad's motion was continued for trial to January 16, 1963. At the same time the case was transferred to another department of the superior court. On the latter date the matter came on for trial before Judge Barnes in the department to which it had been transferred. The record of what then occurred is in part as follows: "MR. CUTLER [counsel for defendant Boulad] : . . . There has already been a jury waiver in this particular matter. . . . THE COURT: You indicated the jury has heretofore been waived? MR. CUTLER: Yes, your Honor. THE COURT: You are satisfied with that? MR. CUTLER: Yes, I recall very clearly the jury being waived in Department 111."

That there is no merit in the contention made is clear from the reasoning of the court in *People* v. *Sears,* 138 Cal. App.2d 773, at page 793-794 [292 P.2d 663] : "Appellant's contention that he did not waive his right to trial by jury is not borne out by the record. The clerk's transcript now before us contains the following entry: 'Trial by jury is waived by each defendant, personally, his counsel and the district attorney.' There was no later request to withdraw the waiver or to demand a jury. Appellant's contention seemingly is that the waiver must be made before the particular judge to whom the case is assigned for trial. This is not the law. Trial by jury is waived in all criminal cases by consent of both parties, expressed in open court by the defendant and his counsel (Const., art. I, § 7; *People* v. *Colton,* 92 Cal.App.2d

---

[1]Article 1, § 7, of the Constitution of the State of California is in part as follows: "A trial by jury may be waived in all criminal cases, by the consent of both parties, expressed in open court by the defendant and his counsel, . . ." It has been held that the trial court has the power to require that a case be tried by jury, notwithstanding the constitutional provision as to waiver of jury trial. (*People* v. *Eubanks,* 7 Cal.App.2d 588, 589 [46 P.2d 789].) The defendant Boulad apparently argues that the judge before whom the waiver is made must *expressly* concur in the waiver. But there is nothing in the language of the constitutional provision which gives weight to that position. Both judges involved in the present matter were obviously satisfied to have the trial proceed as a nonjury trial.

704, 707 [207 P.2d 890].) ■ And, once a trial by jury has been voluntarily and regularly waived, the waiver cannot thereafter be withdrawn except in the discretion of the court (*People* v. *Cowan*, 38 Cal.App.2d 144, 149 [100 P.2d 1079]). As pointed out by respondent, 'The record in the instant case, which is not challenged, reveals such a waiver in open court. It cannot be contended that another waiver was required when the matter was sent out for trial. ■ The Superior Court is not divided into separate and distinct departments. Jurisdiction is vested by the Constitution in the court, not in a particular judge or department. The Constitution further provides that there may be as many sessions of the court as there are judges. ■ The division into departments is for the convenient dispatch of business. Whether sitting separately or together, the judges hold but one and the same court.

■ " 'A transfer from one department to another is not a transfer of the jurisdiction of the cause which remains at all times in the court as a single entity.

" '*Thomasian* v. *Superior Court*, 122 Cal.App.2d 322, 331-332 [265 P.2d 165];

" '*People* v. *Barbara*, 78 Cal.App. 277, 279 [248 P. 304].' " (Accord: *People* v. *Prezas*, 195 Cal.App.2d 850, 852 [16 Cal. Rptr. 274]; *People* v. *Marshall*, 184 Cal.App.2d 535, 536-537 [7 Cal.Rptr. 589].)

■ The defendant could, of course, have made a motion for permission to withdraw his waiver of trial by jury, which motion would have presented a matter for determination by the trial court in the exercise of its discretion. (*People* v. *Osmon*, 195 Cal.App.2d 151 [15 Cal.Rptr. 263].) But he did not do so.

■ During the pendency of the appeal the Supreme Court of the United States decided *Massiah* v. *United States*, 377 U.S. 201 [84 S.Ct. 1199, 12 L.Ed.2d 246] and *Escobedo* v. *Illinois*, 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed.2d 977]. Thereafter our own Supreme Court followed with *People* v. *Dorado*, 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361]. These decisions become material because in addition to the evidence so far summarized, the prosecution presented evidence of a conversation between appellant and Coggeshall which, without going into the details thereof, was highly incriminating to both. This evidence was obtained by the police in the following manner: Each suspect having been questioned, they were placed in adjoining cells. These cells were connected by a small vent containing a concealed microphone which was at-

tached to a tape recorder. The investigating officer specifically asked the jailer to place the two defendants in the adjoining cells. It would be naive to assume that this was done for any purpose other than to be able to listen to their conversation.

The problem is whether appellant's rights, as defined in *Massiah, Escobedo* and *Dorado* were violated. *Escobedo* and *Dorado* are not applicable, for the simple reason that the incriminating statements were not the result of a "process of interrogations that lends itself to eliciting incriminating statements." (*People* v. *Stewart*, 62 Cal.2d 571, 578 [43 Cal.Rptr. 201, 400 P.2d 97].) Appellant realizes this, as he relies mainly on *Massiah*, presumably because it also involved eavesdropping.

Until we receive clarification from the Supreme Court of the United States, we cannot be certain whether *Massiah* stands for any proposition not embraced in *Escobedo*, which was decided after *Massiah*. All of the conditions which led to the inadmissibility of the confession in *Escobedo* were present in *Massiah*. In *Massiah* the investigation had focused on him to the extent that he had been indicted, he had been in custody before the confession in question, though on bail at the time[2] and he was, in effect, being questioned by the authorities.[3] It seems fairly obvious that had *Escobedo* been decided before *Massiah*, the result in *Massiah* would have been a foregone conclusion. Thus we can readily concur with appellant that it is immaterial to an application of the rules announced by the Supreme Court that a particular statement was obtained before, rather than after formal judicial proceedings were instituted against him. The Supreme Court, in *Escobedo* refused to draw the line at that point. "It would exalt form over substance to make the right to counsel, under these circumstances, depend on whether at the time of the interroga-

[2]In Devlin, The Criminal Prosecution in England, the author says of the Judges' Rules: "The Rules apply expressly only to prisoners and persons in custody and were no doubt intended for the protection of such persons, who were particularly at a disadvantage. But if a prisoner were to be released on bail and a police officer were then to go and interview him at his home and obtain from him by means of cross-examination a statement about the crime, it is inconceivable (and almost inconceivable that the attempt should be made) that such a statement should be admitted in evidence." *Ibid.*, p. 46.

[3]There can be no doubt that the Supreme Court considered the conversation in *Massiah* to be, in fact, an interrogation. It quoted with approval the dissent in the court of appeals, which said in part: "... In this case, Massiah was more seriously imposed upon ... because he did not even know that he was under interrogation by a government agent." *Ibid.*, p. 206 (italics added).

tion, the authorities had secured a formal indictment.'' (378 U.S. 478, 486; cf. *People* v. *Garner*, 57 Cal.2d 135, 161 [18 Cal. Rptr. 40, 367 P.2d 680] [concurring opinion].)

On this analysis we cannot agree with appellant that the eavesdropping—the only element in *Massiah* not found in *Escobedo*—violated a constitutional right. In spite of the superficial resemblance between *Massiah* and the present case, the plain fact is that *Massiah* would have found shelter under *Escobedo* while *Boulad* cannot. The decisive difference is that here there was no interrogation of any kind.

It remains to consider whether any other rights of appellant were violated. We can find none. ▮▮▮ As far as any supposed invasion of Boulad's privacy is concerned, it has repeatedly been held that there is no privacy in a jail. (*People* v. *Lopez*, 60 Cal.2d 223, 248 [32 Cal.Rptr. 424, 384 P.2d 16]; *People* v. *Stadnick*, 207 Cal.App.2d 767 [25 Cal.Rptr. 30, 99 A.L.R.2d 766]; *People* v. *Morgan*, 197 Cal.App.2d 90 [16 Cal. Rptr. 838].)

▮▮▮ Undoubtedly the obtaining of the statements involved trickery on the part of the police. Appellant has cited no case and we have found none where trickery alone has vitiated a confession or an incriminating admission. Our Supreme Court held in *People* v. *Ketchel*, 59 Cal.2d 503, 519-520 [30 Cal.Rptr. 538, 381 P.2d 394] that trickery alone, which did not result in some form of coercion, was insufficient. There was, of course, no coercion in the present case. The police merely put the two suspects in adjoining cells and let nature take its course. The investigation and detection of crime is not a game which one side must play according to the most rigorous standards of fair play, while no holds are barred for the other. To forbid the state to use evidence which has been illegally obtained is one thing, but to go further and bar evidence which is the result of conduct that is not illegal but merely does not measure up to the notions of fair play prevalent on the playing fields of Eton is quite another. In England the Judges' Rules were promulgated in 1912. Three years later, in *Rex* v. *Gardner*, 11 Criminal Appeal Reports, 265, 268, the Court of Criminal Appeal had this to say concerning incriminating statements obtained by the police under precisely the same circumstances as here: ''The conduct of the police in listening to this conversation has been condemned, and it has been suggested that the two prisoners were put in adjoining cells in order that they might talk, and that it was improper of the police to listen. It is impossible for the Court

to say that prisoners charged with the same offense should never be put in adjoining cells or that the police ought never to listen. Indeed, it has been said that the duty of a policeman is to keep his ears open and his mouth shut. There is no ground on which the Court can say that evidence of this conversation was not admissible."

It is interesting to note that the third of the Judges' Rules forbids the questioning of persons in custody without the usual caution. Boulad's position must be that eavesdropping is questioning. Those who made the rules did not think so.

 Although appellant, who availed himself of the opportunity to file further authorities after *Dorado* was decided, does not raise the point, we have considered a statement given by him to the police before the tape-recorded conversation. There is no evidence of any warning and it seems clear that its reception into evidence violated *Dorado*. On the other hand, the statement was completely exculpatory and although appellant's account of his movements before the robbery did not agree in all respects with his version on the stand, nothing was made of it on cross-examination and the error is clearly nonprejudicial. (*People* v. *Hillery,* 62 Cal. 2d 692 [44 Cal.Rptr. 30, 401 P.2d 382].)

The judgment is affirmed.

Appellant's petition for a hearing by the Supreme Court was denied August 11, 1965. Mosk, J., did not participate therein.