[Crim. No. 6801. Second Dist., Div. Two. May 20, 1960.]

THE PEOPLE, Respondent, v. GLEN LEE NANCE,
Appellant.

Ellery E. Cuff, Public Defender (Los Angeles), and Richard W. Erskine, Deputy Public Defender, for Appellant.

Stanley Mosk, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

FOX, P. J.—Defendant was convicted of burglary (second degree). He has appealed from the sentence which, in effect, is an appeal from the judgment.

On December 17, 1958, the home of Donald J. Rackemann was burglarized. Upon returning to his home around 4 o'clock in the afternoon of that day, Rackemann observed that a closet door had been pried open and that various articles were strewn through the hall and bedroom. On investigation he discovered that two watches, some other jewelry, a Hi-Fi record player, and approximately 100 albums had been taken, 36 of which were later returned.

During the latter part of the morning of the day in question, Mrs. Lois Mende, who lived across the street from the Rackemann house, observed an old, black car, with two young men in it, drive up to the Rackemann house. Due to the distance, Mrs. Mende was not able to identify the men. She saw the two men go into the house, but did not see them carrying anything out.

One of the men involved in the burglary was Jon Hansen, a brother-in-law of Rackemann.

Officer Robinson investigated this burglary, during the course of which he talked with defendant about it on January 7, 1959. He informed defendant that there was an outstanding warrant for his arrest for burglary. Defendant stated that he did not know what it could be unless it was the Rackemann house. The officer told him that the burglary did concern the Rackemann place. Defendant then stated that he did not

commit the burglary. The officer advised him that someone had stated that he had committed the burglary. Defendant again denied it. He thereupon stated, however, that as long as Jon Hansen had told on him, he would tell what happened. He then stated that Hansen had come by his house early in the morning on the day of the burglary and that Hansen had told him that he had previously burglarized his brother-in-law's home and had taken a number of cuff links; defendant stated that Hansen told him he had sold the cuff links for practically nothing and later found out that they were quite valuable; that he did not know where to get rid of the stuff, and that there was a lot more of valuable things in the house, and he wanted to burglarize it again; that defendant told Hansen if he (Hansen) burglarized the house then he (defendant) would help him dispose of the things. Defendant told the officer that later on that afternoon Hansen visited him again, and told him that he had committed the burglary and had some of the things; that defendant informed Hansen that he would make a contact to sell the things for him. Defendant said that he thereupon made such contact and took Hansen to the Big Donut on Century and Normandie where the contact was made with a third person and where arrangements were made for Hansen to sell the stolen articles.

During that period, a young man by the name of Evans was staying at defendant's place for a few days. He had a dark colored Pontiac. Defendant also related to Officer Robinson that some time after the burglary Rackemann and Hansen visited his home while Evans was there; that Rackemann did not come into the house, but Hansen did, and that he spoke with Evans in his, defendant's, presence, at which time Hansen told defendant that ''they knew who had the stuff, and that they had to get the things back.'' Defendant said he left the house through a window. He further stated that he tried to retrieve some of the things, but they were already gone and it was impossible to recover any of them. Defendant further stated that Evans, at a later time, gave Hansen some of the records back, and that Hansen returned them to Rackemann's place.

Both Hansen and defendant denied having anything to do with the burglary.

In seeking a reversal, defendant argues that the evidence is insufficient to sustain the judgment in that it fails to show that he directly committed the act, or aided and abetted in its commission, or, not being present, advised and encouraged

its commission. Hence, he argues, he does not come within any of the provisions of section 31, Penal Code, defining "principals."

Defendant concedes that "the evidence shows that a burglary was committed." He also says that "the evidence is that Hansen had burglarized the house before, that he wanted to do it again and that he did burglarize it again."

The only question then is, Does the evidence connect the defendant with the commission of the offense? We have concluded that this question must be answered in the affirmative.

Defendant correctly points out that the evidence fails to show that he personally participated in burglarizing the Rackemann house, but it does disclose that on the morning of the burglary Hansen told defendant about having previously burglarized his brother-in-law's home; that he was able to sell the loot for only a fraction of its value; that there were other valuable articles in the house; that he wanted to burglarize it again but that he did not have an outlet for the merchandise. Defendant agreed to help dispose of the "stuff" if Hansen did burglarize the place again. Hansen proceeded later that morning to again enter his brother-in-law's home and take therefrom a number of articles. He then went back to defendant and told him what he had done. Defendant immediately put Hansen in touch with his "contact," with whom arrangements were made for the sale of the stolen goods.

It is apparent that the burglary was a very simple matter for Hansen. He could not afford, however, to keep the articles that he took because of his relationship with Rackemann. Obviously, he wanted the money out of them, but it was difficult for him to dispose of them. Thus the disposition of the stolen goods was an essential, integral part of the over-all scheme. From the conversation of the parties, and their subsequent acts, the trial court could reasonably infer that there was an agreement between Hansen and the defendant to burglarize the Rackemann house, sell the stolen property and share the proceeds. This corrupt agreement constituted a conspiracy to commit the burglary and to dispose of the stolen items. Hansen's entry into the Rackemann house was an overt act in furtherance of the agreement.

Each party to a conspiracy is criminally responsible for all acts done in furtherance of the conspiratorial design. (*People* v. *Welch*, 89 Cal.App. 18, 27 [264 P. 324] ; *People* v. *Frankfort*, 114 Cal.App.2d 680, 699 [251 P.2d 401].) In legal contemplation, "the act of one is the act of all." (*People* v.

*Kauffman,* 152 Cal. 331, 334 [92 P. 861].) In a concerted criminal venture, each party is equally culpable and should suffer the same consequences. Thus, defendant's guilt is established although he did not personally participate in the burglary.

While no conspiracy was here charged, the law is settled that a conspiracy need not be pleaded in an information if the evidence actually shows the existence of one. (*People* v. *Tanner,* 3 Cal.2d 279, 299 [44 P.2d 324]; *People* v. *Whelpton,* 99 Cal.App.2d 828, 832 [222 P.2d 935]; *People* v. *Williams,* 145 Cal.App.2d 163, 167 [302 P.2d 393].)

The judgment (sentence) is affirmed.

Ashburn, J., and Herndon, J., concurred.