[Crim. No. 9371.    Second Dist., Div. Two.    July 15, 1964.]

THE PEOPLE, Plaintiff and Respondent, v. JAMES WILLIAM COLLINS, Defendant and Appellant.

James William Collins, in pro. per., and Louis L. Selby, under appointment by the District Court of Appeal, for Defendant and Appellant.

462

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Peter Graber, Deputy Attorney General, for Plaintiff and Respondent.

FOX, P. J.—Defendant and one Michael J. Yelenovsky were charged with the armed robbery of Josefina Hernandez on March 27, 1963. The information was subsequently amended to include charges of three prior felony convictions against defendant, which he admitted. He pleaded not guilty to the substantive offense.[1]

Following a jury trial, defendant was found guilty of first degree robbery, and was also found to have been armed at the time of the offense. The court then declared defendant to be an habitual criminal under section 644, subdivision (a), of the Penal Code, and sentenced him to the state prison for the term of his natural life. Defendant appeals from the judgment of conviction and from the sentence, which are actually one and the same. (*People* v. *Sweeney,* 55 Cal.2d 27, 33 [9 Cal.Rptr. 793, 357 P.2d 1049]; *People* v. *Nance,* 181 Cal. App.2d 147, 148 [5 Cal.Rptr. 130].)

Defendant does not, and could not, question the sufficiency of the evidence to sustain his conviction. The victim of the robbery identified him as the man who entered her store armed with a pistol, beat her with the gun until she was bleeding and unconscious, and took the small amount of cash she had on hand. Another witness, one Antonio Garcia Gonzalez, entered the victim's store while defendant and his companion were there. Defendant, pointing the gun at Gonzalez, threatened to shoot him if he moved or yelled. Defendant and his companion then ran out of the store, and Gonzalez pursued them down the street yelling for people to stop them. This scene attracted the attention of Deputy Sheriff Daniel T. Stennett who, as he sat in his car, observed a man with blood on him shouting and pointing to two men running down the street. Officer Stennett joined the chase and followed the men into the Federal Building, where he apprehended them.

At the trial defendant's story, which was supported by Yelenovsky's testimony, was that Yelenovsky had been the sole perpetrator of the crime, and that defendant had known nothing about it. Both men testified that defendant waited outside the store while Yelenovsky went in, ostensibly to buy a pack of cigarettes, and then became frightened when Yelenovsky ran out and so started running with him. It is

---

[1] Yelenovsky entered a plea of guilty.

evident from the verdict, however, that the jury was unimpressed by defendant's account of the crime, and considering the evidence as a whole, they were clearly justified in their conclusion.

█ Defendant first raises the unmeritorious contention that he was deprived of a fair and impartial trial by reason of certain alleged misconduct on the part of the prosecutor. The conduct of which defendant complains took place during the cross-examination of Yelenovsky, and consisted of the following questions: "Q. [By the Deputy District Attorney] Since you have been in jail, you have talked to Mr. Collins a number of times, haven't you, sir? A. [By Yelenovsky] Yes, sir. Q. As a matter of fact, he tells you every day—or rather, he has told you Friday and today all of the testimony that the other witnesses have given, hasn't he? Hasn't he done that? A. No, he hasn't. Q. Did he tell you about this gun? A. No, sir. Q. Do you and he talk about the case when you are together in the jail, or in the lockup room here, in the court? A. No. Q. Have you discussed with Mr. Collins the testimony that you would give here in the court? A. No, I didn't."

Defendant's trial counsel did not object to these questions, nor did he request that the court give the jury an admonishing instruction. The general rule under such circumstances is that defendant is precluded from raising the objection for the first time on appeal. (*People* v. *Lopez,* 60 Cal.2d 223, 252 [32 Cal.Rptr. 424, 384 P.2d 16]; *People* v. *Lyons,* 50 Cal.2d 245, 262 [324 P.2d 556].) We see no reason for not applying this rule in the instant case.

Defendant's reliance on *People* v. *Perez,* 58 Cal.2d 229 [23 Cal.Rptr. 569, 373 P.2d 617], is misplaced since the factual picture is clearly distinguishable. In *Perez,* the court held it to be misconduct for the prosecutor, in the absence of a showing of good faith, to ask a key defense witness if he had been threatened. The defendant in *Perez* was then permitted to raise the point for the first time on appeal because the case was "closely balanced" and hence within a well-recognized exception to the general rule. (*People* v. *Lyons,* 50 Cal.2d 245, 262 [324 P.2d 556].) Unlike *Perez,* the record in the present case clearly indicates that the question of defendant's guilt was not closely balanced. Defendant's attempt to bring his case within that exception therefore fails.

Moreover, even assuming that defendant can raise the objection at this late date, we do not consider it to be well taken. █ Whether a prosecutor has committed prejudicial

misconduct must be determined on the basis of the particular factual situation involved. (*People* v. *Lyons*, 50 Cal.2d 245, 262 [324 P.2d 556].) In the instant case Yelenovsky admitted having talked to defendant "a number of times" since he had been in jail. ■ Having thus established an opportunity for the fabrication of testimony by defendant and Yelenovsky, the prosecutor was justified in pursuing the issue further in his attempt to impeach Yelenovsky's story. This was not the type of case, as defendant asserts, wherein the prosecutor in bad faith asks a damaging question, fully aware that he will receive a negative answer, and then fails to prove the existence of the fact suggested by the question. The prosecutor here established his good faith in the first instance by eliciting from Yelenovsky an admission of his talks with defendant. His subsequent questions were merely designed to amplify that already impeaching fact.

Defendant also argues that the court was without jurisdiction to adjudge him an habitual criminal under Penal Code section 644, subdivision (a),[2] because no proof was offered as to whether or not his prior convictions had resulted in separate terms of imprisonment. Our review of the record indicates that this contention must be sustained.

A sentence of life imprisonment following an adjudication that the defendant is an habitual criminal is a serious one. ■ To obtain it, the prosecution must prove all the necessary elements of such an adjudication beyond a reasonable doubt. (*People* v. *Morton*, 41 Cal.2d 536, 539 [261 P.2d 523]; *People* v. *Figuieredo*, 146 Cal.App.2d 807, 809 [304 P.2d 161].) ■ Respondent in the instant case concedes that the prison terms served by defendant for his prior convictions may have overlapped, and that concurrently served terms do not satisfy the requirements of section 644, subdivision (a). (*People* v. *Sukovitzen*, 138 Cal.App.2d 159, 164 [291 P.2d 107].) The trial court, therefore, was clearly in error in declaring defendant to be an habitual criminal in the absence of proof that he served separate terms. (*People* v. *Figuieredo, supra.*) ■ Respondent also suggests the correct procedure under such circumstances, namely, to remand the

---

[2] In pertinent part, Penal Code section 644, subdivision (a) reads as follows: "Every person convicted in this State of the crime of robbery, . . . who shall have been previously twice convicted upon charges separately brought and tried, and who shall have served separate terms therefor in any state prison . . . of the crime of robbery, burglary . . . shall be adjudged a habitual criminal and shall be punished by imprisonment in the state prison for life; . . ."

case to the trial court for a limited new trial solely concerning proof of this essential requirement of section 644, subdivision (a). The Supreme Court in *People* v. *Morton*, 41 Cal.2d 536, states at pages 544-545 [261 P.2d 523]: "This procedure is the proper one. It carries out the policy of the statutes imposing 'more severe punishment, proportionate to their persistence in crime, of those who have proved immune to lesser punishment' (*In re McVickers, supra,* 29 Cal.2d 264, 270 [176 P.2d 40]), and prevents defendants from escaping the penalties imposed by those statutes through technical defects in pleadings or proof."

Respondent seeks to avoid the necessity of producing proof of service of separate terms by pointing out that defendant, when arraigned, admitted the priors as alleged in the information. ▮▮▮ The information alleged, as to each prior, that defendant had "served a term of imprisonment therefor in the State Prison," but does not specify separate terms. In view of the strict compliance with the elements of section 644, subdivision (a), necessary for an adjudication under that section, we cannot construe defendant's admissions to be broader than the allegations contained in the information.

The judgment is affirmed as to the conviction, but that part of the judgment adjudging defendant an habitual criminal and imposing sentence accordingly is reversed and remanded to the trial court with directions to resentence the defendant after the conclusion of a limited new trial on the question of whether he is an habitual criminal within section 644, subdivision (a). (*People* v. *Figuieredo,* 146 Cal.App.2d 807, 810 [304 P.2d 161].)

Herndon, J., and Roth, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 10, 1964. Mosk, J., did not participate therein.