[Crim. No. 4110.    Third Dist.    Mar. 15, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. JAMES MAYMAN REED, Defendant and Appellant.

Tony Stathos, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Doris H. Maier, Assistant Attorney General, and Marjory E. Winston, Deputy Attorney General, for Plaintiff and Respondent.

PIERCE, P. J.—Defendant, convicted of armed robbery and adjudged an habitual criminal under Penal Code section 644, subdivision (a),[1] appeals.

Defendant admitted two prior convictions alleged in the information. They were (1) a conviction "on or about the 1st day of February, 1961" for the crime of burglary, first degree, in Sacramento County, and (2) a conviction "on or about the 8th day of December, 1964" of the crime of burglary, second degree, in Sacramento County. The information in connection with each "prior" charged alleges: "pursuant to said judgment said defendant served a term of imprisonment therefor in the State Prison."

Defendant pleaded not guilty to the charge of armed robbery. ▇▇▇ At the commencement of the trial the two "priors" were admitted. Service of separate terms thereon was not admitted. During the trial defendant, testifying in his own behalf, admitted that he had served a prison term for the first "prior" and that while serving in a forestry camp he had escaped. He made no admissions relating to the serving of a separate term for the second "prior" *and no evidence containing such proof was introduced by the prosecution.* It is contended by defendant, stipulated to by the Attorney General, that under the circumstances the judgment of habitual

---

[1] "(a) Every person convicted in this State of the crime of robbery, burglary of the first degree, burglary with explosives, rape with force or violence, arson as defined in Section 447a of this code, murder, assault with intent to commit murder, train wrecking, felonious assault with a deadly weapon, extortion, kidnaping, escape from a state prison by use of force or dangerous or deadly weapons, rape or fornication or sodomy or carnal abuse of a child under the age of 14 years, or any act punishable under Section 288 of this code, conspiracy to commit any one or more of the aforementioned felonies, who shall have been previously twice convicted upon charges separately brought and tried, and who shall have served separate terms therefor in any state prison and/or federal penal institution either in this State or elsewhere, of the crime of robbery, burglary, burglary with explosives, rape with force of violence, arson, murder, assault with intent to commit murder, grand theft, bribery of a public official, perjury, subornation of perjury, train wrecking, feloniously receiving stolen goods, felonious assault with a deadly weapon, extortion, kidnaping, mayhem, escape from a state prison, rape or fornication or sodomy or carnal abuse of a child under the age of 14 years, or any act punishable under Section 288 of this code, conspiracy to commit any one or more of the aforementioned felonies, shall be adjudged a habitual criminal and shall be punished by imprisonment in the state prison for life:"

470

criminality must be reversed. Under the facts in the record and under the tests of habitual criminality as hereinafter set forth we cannot tell whether defendant is, or is not, an habitual criminal under Penal Code section 644, subdivision (a).

The principal problem we deal with on this appeal is the fixing of guidelines for the trial court in a new trial to be limited to the issue of habitual criminality. (Other contentions on appeal, to be discussed briefly below, have no merit.) The habitual criminal issue will turn upon the meaning in said Penal Code section 644, subdivision (a) (see footnote 1), of the phrase ''and who shall have served separate terms therefor in any state prison.''

In that phrase the word ''separate'' was first added to the statute in 1935. (Stats. 1935, ch. 602, p. 1699.)

Two cases have interpreted the phrase we discuss. In *People* v. *Mangan* (1948) 87 Cal.App.2d 765 [197 P.2d 781] (hearing by Supreme Court denied) defendant conceded two prior convictions for robbery, one in 1925 and the second in 1935. He was on parole during his term for the first (1925) robbery when he committed the 1935 offense. On appeal from the sentence adjudicating him to be an habitual criminal defendant urged that since, after the 1935 conviction, his prison sentence (declared to be concurrent with the balance of the 1925 sentence) overlapped by two weeks, he was not within Penal Code section 644, subdivision (a). Denying that contention Presiding Justice Peters, speaking for the court, said (on p. 768) : '' 'But the legislature does not require that a *full term* be served, and a reasonable construction of the word would seem to be any period of time, otherwise a premium would be placed upon the act of escape.' [Citations.]

'' [T]he major part of the 1935 term was separate from the 1925 term. Since part of a term is a 'term,' within the meaning of the section, it follows that parts of two terms constitute 'separate' terms within the meaning of the section.''

In *People* v. *Sukovitzen* (1955) 138 Cal.App.2d 159 [291 P.2d 107], a set of facts rather more complicated than those in *Mangan, supra,* was involved.[2]

The *Sukovitzen* appeal concerned a court-tried armed robbery committed November 8, 1954, with two admitted ''priors,'' on

[2]Other offenses not included in the proscribed lists of crimes in Penal Code section 644, subdivision (a), had resulted in convictions for which defendant was later paroled, and also, regarding one Sacramento robbery committed in 1945, the court was not concerned because no prison sentence thereon had been commenced.

the basis of which the trial court had adjudicated defendant to be an habitual criminal. The "priors" were two robberies, one in Nevada County and the other in San Francisco, both committed in 1943 while defendant was serving a term for forgery and was out on parole. Separate trials resulted in separate convictions to run concurrently. In reviewing the adjudication of habitual criminality the appellate court distinguished the *Mangan* case. (See p. 163 of 138 Cal.App.2d.) The court's holding against habitual criminality was based upon the fact that at the time of the 1954 conviction defendant was then serving both the San Francisco term and Nevada County term concurrently. A point is made (on p. 163) that although the Nevada County conviction was first, and therefore a part of that term had been served before the conviction for the San Francisco offense and thus might be said to be served separately from the San Francisco term, no part of the San Francisco term (running concurrently with the Nevada County term) had been served separately from the Nevada County term, and as a result was not within the language of the habitual criminal statute.

*People* v. *Collins* (1964) 228 Cal.App.2d 460, at page 464 [39 Cal.Rptr. 595], cites the *Sukovitzen* case and states the dictum that concurrently served overlapping terms do not satisfy the terms of Penal Code section 644, subdivision (a). The holding in *Collins*, however, is limited to a reversal for a lack of proof. The holding is sound; we respectfully suggest the dictum is unsound because it implies that no overlapping sentence, at least where sentences are served concurrently, can satisfy the habitual criminality statute.

There is no conflict between the *Mangan* and *Sukovitzen* holdings. In fact, the difference in their facts will serve to illustrate what we conceive to have been the real legislative purpose when in 1935 (Stats. 1935, ch. 602) the word "separate" was inserted and the provision now is "and who shall have served separate terms therefor."

We have seen that in *Sukovitzen*, although the defendant while on parole committed two robberies, one in Nevada County, another in San Francisco, he perpetrated the two offenses without there having been any period of imprisonment—or chance of rehabilitation—intervening. Before the 1935 amendment the mere fact that defendant was twice tried, convicted, and sentenced would have constituted the service of two terms. The same would have been true had defendant been convicted after separate trials for a "spree" of two or

more crimes of the proscribed categories, even though each was committed during the same week or even on the same night. Before 1935 ''habitual criminality'' (then carrying with it a life sentence without possibility of parole for 12 years) would, under the facts assumed and those in *Sukovitzen, supra,* rest upon the accident of separate trials. That, we believe, is why the Legislature in 1935 changed the law. Compare the facts of the *Mangan* case. There the two robberies were separated by separate convictions 10 years apart with two separate periods of imprisonment. Defendant had had his two chances of rehabilitation. He had demonstrated his unreformed recidivism. The court quite properly refused to attribute to the Legislature an intent to make the mere happenstance of overlapping concurrent sentences the decisive factor in the determination of habitual criminality.

██ The purpose of this, or any, habitual criminal statute is not obscure. It is twofold: (1) to act as a deterrent to repeated criminal acts while affording the criminal two (in California) opportunities of rehabilitation, and (2) to protect society against the incorrigible recidivist. (See 8 Hastings L.J., pp. 324-325; *State* v. *Miles* (1949) 31 Wn.2d 55 [207 P.2d 1209]; 1 Underhill, Criminal Evidence (5th ed. 1956) sec. 215, p. 509.) ██ The fixing of a sentence to run concurrently with another has quite a different purpose. Its purpose is to make the punishment fit the crime—or at least to start the processes in motion by which the Adult Authority under our indeterminate sentence law will do so. In the law review article cited above (op. cit., p. 325) the author states: ''The motivation of mercy which causes a trial judge to impose the more lenient punishment is admirable. But it should not be defeated by the very thing it is intended to prevent, namely, a return to crime.'' Neither concurrency nor the concomitant circumstance of overlapping constitutes an accurate yardstick by which habitual criminality can be measured. It *can* be measured by a determination whether separate terms in prison for separate offenses separately sentenced have been followed by separate chances at rehabilitation. Two chances. The third time around defendant, to adopt the vernacular, ''has had it.'' We so hold.

Rationalization of this interpretation is also quite obvious: a premium is intended to be placed upon rehabilitation; not upon parole violations or (as Presiding Justice Peters pointed out in *People* v. *Mangan, supra,* 87 Cal.App.2d 765) upon escape. Deterrence of the latter is the aim.

■ We consider the other questions raised on appeal. Defendant was a former tenant of an apartment house managed by a Mrs. Stapleton. Having gained admission to her apartment through a ruse, he robbed her of $71, threatening her with a knife. She identified defendant positively after he had been apprehended. He urges incompetency of assigned trial counsel who, according to defendant, did not call certain unnamed and unidentified convicts through whom he hoped to establish an alibi. He conceded they would have been reluctant witnesses. None of the arguments made has merit. They are bald assertions by defendant himself[3] without substantiation in the record. (See *In re Atchley* (1957) 48 Cal.2d 408 [310 P.2d 15]; *People* v. *Seals* (1961) 191 Cal.App.2d 734 [13 Cal.Rptr. 7].) This was not, as defendant urges, "newly discovered" evidence which would have justified a new trial. (*People* v. *Green* (1960) 180 Cal.App.2d 537 [4 Cal.Rptr. 304].) Defendant refers to a number of matters outside the record which we cannot, and do not, consider.

It is appropriate that we affirm the judgment of conviction on the charge of armed robbery, reversing the judgment adjudicating habitual criminality. (*People* v. *Collins, supra,* 228 Cal.App.2d 460; cf. *People* v. *Ebner* (1966) 64 Cal.2d 297 [49 Cal.Rptr. 690, 411 P.2d 578].)

The portion of the judgment convicting defendant of robbery is affirmed. ■ The portion of the judgment which adjudicates defendant to be an habitual criminal is reversed and the cause is remanded to the trial court for redetermination of defendant's status as an habitual criminal and resentence in accordance with this opinion.

Friedman, J., and Regan, J., concurred.

---

[3]Defendant's assigned counsel on appeal did not raise these arguments. He was not required to. He did point out to this court that defendant desired these points to be raised.