[Crim. No. 6375.   First Dist., Div. One.   June 21, 1967.]

In re FRED PROPP, JR., on Habeas Corpus.

Fred Propp, Jr., in pro. per., and Andrew L. Tobia, under appointment by the Supreme Court, for Petitioner.

Thomas C. Lynch, Attorney General, and Daniel J. Kremer, Deputy Attorney General, for Respondent.

ELKINGTON, J.—Fred Propp, Jr., who in his lifetime has been found guilty of 12 felony offenses, and who has on 7 separate occasions been confined in state prisons, seeks review, by way of habeas corpus, of an adjudication that he is an habitual criminal.

In 1963 Propp was convicted by a jury of first degree robbery, conspiracy, possession of a sawed-off shotgun and possession by an ex-convict of a firearm. He was sentenced to state prison for the greater offense of robbery. (See *People* v. *Propp,* 235 Cal.App.2d 619 [45 Cal.Rptr. 690]; *People* v. *Propp, ante,* p. 611 [59 Cal.Rptr. 700], filed June 6, 1967.) He was contemporaneously adjudicated an habitual criminal under Penal Code section 644 subdivision (b).[1,2]

The habitual criminal adjudication was based on admitted allegations of the information that Propp had previously been convicted of burglary in 1934, two counts of robbery in 1942 (as to which the sentences were ordered to run consecutively) and violation of section 2042 (escape from a state

---

[1] All statutory references herein, unless otherwise indicated, are to Penal Code.

[2] Section 644, subdivision (b) as pertinent here, provides that ''Every person convicted . . . of robbery, . . . who shall have been previously three times convicted, upon charges separately brought and tried, *and who shall have served separate terms therefor* in any state prison . . . of the crime of *robbery, burglary, . . . escape from a state prison, . . .* shall be adjudged an habitual criminal and shall be punished by imprisonment in the state prison for life.'' (Italics added.)

prison, Deuel Vocational Institution) in 1958. Through inadvertence Propp's commitment recited that the admitted 1934 burglary conviction was for first degree robbery.

■ Propp contends that he did not, in fact, serve a separate term for the 1958 escape conviction, and that accordingly section 644 subdivision (b) was improperly invoked. He points out that this escape sentence was ordered to run concurrently with the earlier consecutive robbery terms, and that it was in fact served within, and before the expiration of, the robbery terms.

The question of Propp's adjudication as an habitual criminal was argued and decided on Propp's appeal (*People* v. *Propp, supra*) on the mistaken theory that Propp had been adjudicated an habitual criminal under section 644 subdivision (a) which would allow an earlier parole. We believe this, together with the added penalty involved, constitute *special circumstances* justifying our consideration of his stated contention on habeas corpus. (See *In re Mitchell*, 56 Cal.2d 667, 671 [16 Cal.Rptr. 281, 365 P.2d 177]; *In re Shipp*, 62 Cal.2d 547, 552 [43 Cal.Rptr. 3, 399 P.2d 571].) ■ Furthermore, the writ is properly made available to a prisoner to test the legality of an habitual criminal adjudication even though an appeal has previously been taken from the judgment of conviction which brought about such adjudication. (See *In re McVickers*, 29 Cal.2d 264 [176 P.2d 40].)

We therefore make inquiry as to whether Propp is unlawfully imprisoned as an habitual criminal under section 644 subdivision (b).

Propp was received at state prison on September 18, 1934, following a conviction for burglary. He was paroled June 3, 1942. He was then returned to state prison July 27, 1942, on consecutive sentences for first degree robbery. He was paroled August 27, 1953. On July 6, 1954, he was received at state prison for violation of section 12021, his term to run concurrently with the robbery terms. Following this commitment he was transferred by the Director of Corrections to Deuel Vocational Institute. At that facility, for the purposes of section 644, he continued to be an inmate of a state prison. (See section 2037.) While at Deuel Vocational Institute he escaped. After conviction for that felony he was returned (his term to be served concurrently with the section 12021 and robbery terms) to state prison on January 24, 1958. On January 22, 1962, he was again released on parole.

As Propp contends, from July 27, 1942, until after comple-

tion of the five-year escape term, his terms for the robbery convictions continued. It follows, he says, that the escape term was not separately served.

Propp relies on *People* v. *Sukovitzen*, 138 Cal.App.2d 159 [291 P.2d 107], and *People* v. *Collins*, 228 Cal.App.2d 460 [39 Cal.Rptr. 595]. These cases would indicate that his escape term was not separately served and that he is therefore right in his contention.

However, the more recent case of *People* v. *Reed*, 249 Cal. App.2d 468 [57 Cal.Rptr. 407], places a different interpretation on section 644. We are convinced that the court there reached the correct result. *Reed, supra,* states (pp. 472-473):

■ "The purpose of this, or any, habitual criminal statute is not obscure. It is twofold: (1) to act as a deterrent to repeated criminal acts while affording the criminal two (in California) opportunities of rehabilitation, [3] and (2) to protect society against the incorrigible recidivist. (See 8 Hastings L. J., pp. 324-325; *State* v. *Miles* (1949) 34 Wn.2d 55 [207 P.2d 1209]; 1 Underhill, Criminal Evidence (5th ed. 1956) § 215, p. 509.) ■ The fixing of a sentence to run concurrently with another has quite a different purpose. Its purpose is to make the punishment fit the crime—or at least to start the processes in motion by which the Adult Authority under our indeterminate sentence law will do so. In the law review article cited above (*op.cit.,* p. 325) the author states: 'The motivation of mercy which causes a trial judge to impose the more lenient punishment is admirable. But it should not be defeated by the very thing it is intended to prevent, namely, a return to crime.' ■ Neither concurrency nor the concomitant circumstance of overlapping constitutes an accurate yardstick by which habitual criminality can be measured. It *can* be measured by a determination whether separate terms in prison for separate offenses separately sentenced have been followed by separate chances at rehabilitation. Two chances. The third time around defendant, to adopt the vernacular, 'has had it.' We so hold.

"Rationalization of this interpretation is also quite obvious: a premium is intended to be placed upon rehabilitation; not upon parole violations or (as Presiding Justice Peters pointed out in *People* v. *Mangan, supra,* 87 Cal.App.2d 765

---

[3]*Reed, supra,* concerns section 644, subdivision (a), the application of which requires the previous conviction of only two of the designated felonies.

[197 P.2d 781]) upon escape. Deterrence of the latter is the aim.''

Here Propp was convicted and served a prison term for burglary. He had his first chance at rehabilitation. Following his parole he was convicted of robbery. He entered prison and was given a second opportunity to rehabilitate himself. Again paroled, he violated section 12021, was convicted and reentered prison. He escaped, thereby committing his third section 644 offense. For that crime he was again committed to prison and given his third and last chance, under that section, at rehabilitation. But Propp did not rehabilitate himself; instead he committed, and was convicted of, the crime of robbery, thus bringing upon himself the penalty of section 644 subdivision (b).

We hold that the petitioner Fred Propp, Jr., is lawfully imprisoned as an habitual criminal under the provisions of section 644 subdivision (b) as adjudicated by the superior court on his 1963 conviction of robbery.

The Department of Corrections and the Adult Authority will take notice that Propp's 1934 conviction was for burglary, second degree, and not for robbery, first degree, as recited in his commitment. (See *Downs* v. *State of California*, 202 Cal.App.2d 609, 615 [20 Cal.Rptr. 922]; *In re Rye*, 152 Cal.App.2d 594, 595 [313 P.2d 914].)

The remainder of petitioner's claims of error were determined adversely to him on his appeal from his 1963 convictions. He is not entitled, by way of habeas corpus, to a second review of matters, neither of fundamental importance nor affecting jurisdiction, already decided on appeal. (*In re Horowitz*, 33 Cal.2d 534, 546 [203 P.2d 513].)

The order to show cause is discharged.

Molinari, P. J., and Sims, J., concurred.

Petitioner's application for a hearing by the Supreme Court was denied September 13, 1967. Sullivan, J., did not participate therein.