[Crim. No. 9609. Third Dist. Dec. 8, 1978.]

THE PEOPLE, Plaintiff and Respondent, v.
TYRONE JAMES, Defendant and Appellant.

**COUNSEL**

Paul Halvonik, State Public Defender, under appointment by the Court of Appeal, Gary S. Goodpaster, Chief Assistant State Public Defender, Mark L. Christiansen and James Wright, Deputy State Public Defenders, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Joel E. Carey and Robert F. Tyler, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**PARAS, J.**—Defendant Tyrone James appeals from a judgment of the Superior Court of Sacramento County sentencing him to a total of 11 years in prison after a jury found him guilty of second degree murder, with use of a deadly weapon. (Pen. Code, §§ 187, 12022.) Defendant's contentions are: (1) The trial court committed prejudicial error in allowing his impeachment by means of a prior felony; (2) the court erred in admitting into evidence inflammatory photographs of the murder victim; (3) the court improperly instructed the jury; (4) the court

incorrectly determined the term of sentence under the determinate sentencing law; and (5) the court failed to advise him properly concerning the admission of prior convictions.

FACTS

On the afternoon of July 23, 1977, Richard Darden, Jerome Harris, and Antonio Johnson attended an Air Force picnic at Whiterock Park. After relaxing and drinking some wine, Johnson and Darden left Harris in the park and went to the home of Tina Jordan, a friend of Johnson. Jordan suggested that the three men accompany her and Brigitte Chambers to a party that night, and they accepted. Johnson and Darden then picked up Harris at the park and returned to the nearby air force base in order to prepare for the party. Harris drove the group to the party at about 11 p.m.

At the party the men found nothing alcoholic to drink, so they went to a store and bought some rum and wine. Some time after returning, Johnson got into an argument with one of the other guests, was hostile and rude to him, and called him a "fat faggot." The argument ended, but was later repeated. Johnson then got into an argument with the owner of the apartment, and used insulting language toward her. Darden and Harris tried unsuccessfully to get Johnson to leave. Terrence Archie, a male friend of the apartment owner, told Johnson that since he showed disrespect for his woman he would have to leave. Johnson then agreed to leave and exited.

Jordan and Chambers had already left the apartment and as they were walking to the car heard Johnson call to them to wait. They turned and saw that Archie had stopped and was talking to Johnson and that Johnson was apologizing for his behavior. A number of guests from the party had come out behind Archie, some holding baseball bats and sticks. Johnson told them he was leaving and they could return to their party.

Defendant, who was also at the party, then approached Johnson and said something to him, to which Johnson replied that defendant should stay out of it, that he was an "instigating motherfucker." Defendant struck Johnson in the face, sending his glasses flying and knocking him down. Several people came between the two to separate them. Defendant drew a knife. Johnson avoided the intervenors and approached defendant, who stabbed him in the stomach. Johnson again approached defendant, and defendant stabbed him several times. Johnson stood for a

moment, then spit up blood and collapsed. Darden, Harris, Jordan, and Chambers all testified that Johnson did not have a knife during the fight.

The pathologist who performed the autopsy testified that Johnson's body had three stab wounds in the chest and three in the abdomen. There were numerous stab wounds on the left elbow, forearm and wrist, as well as on both sides of the left hand. The pathologist was of the opinion that any one of the three wounds could have caused death, one having pierced the heart, another the stomach, and yet another the liver. Johnson's blood alcohol level was .27 percent.

Defendant admitted stabbing Johnson. He testified as follows. He arrived at the party about 10:30 or 11 p.m. and later noticed Johnson arguing with another guest. When Johnson left, followed by guests with bats and sticks, he believed that the matter was settled. Someone then told him that his brother was outside arguing with the Johnson group, so he went outside. There he saw Archie talking to Johnson and felt he could settle things down, so he approached and asked Johnson to leave. Johnson told him to "shut up" and appeared about to strike him, so defendant struck him first. Other people then grabbed and held him. He saw Johnson taking something out of his pocket, which turned out to be a knife. In order to protect himself he kicked at Johnson and was stabbed in the leg. He then reached down and pulled his own knife out from his boot. Johnson charged, defendant deflected him by grasping his wrist, then stabbed him in the stomach and pushed him away. Johnson charged again, and defendant again grasped his wrist and stabbed him three or four times. Johnson grabbed defendant's throat with both hands and began to choke him, and defendant stabbed his arm and hand in order to break the grip. Defendant managed to free himself, and Johnson collapsed. Defendant went back through the apartment and outside to the patio. Although he felt that he should stay, he decided against it and climbed the fence and returned home. On the way home he hid the knife. He entered his apartment, where he changed clothing and left again. He called a friend who took him to the hospital where he had his wound treated. Sometime later he had a friend contact the county public defender who arranged for him to surrender himself.

I

Defendant contends that the trial court committed prejudicial error in allowing his impeachment by a prior felony conviction. Prior to trial defendant admitted he had been convicted of a violation of Penal

Code section 470 (forgery) in 1972 and of a violation of Penal Code section 211 (robbery) in 1973. Defendant's counsel moved for an order directing the prosecutor not to ask questions for impeachment purposes concerning the prior convictions in the event that defendant elected to testify. The judge heard the arguments and took the motion under submission, but stated he would not rule on it until after the presentation of the People's case. At the conclusion thereof he ruled that the robbery conviction could not be used for impeachment since its probative value was outweighed by the danger of undue prejudice; but the forgery conviction could be used.

In *People* v. *Beagle* (1972) 6 Cal.3d 441 [99 Cal.Rptr. 313, 492 P.2d 1], the California Supreme Court held that the use of a prior felony conviction for impeachment is subject to the trial court's discretion, and that it may be excluded where its probative value is substantially outweighed by the probability that it will create substantial danger of undue prejudice (6 Cal.3d at p. 451). The court did not purport to establish rigid standards, but noted that important factors to be considered are whether a prior conviction reflects on one's honesty and integrity, the temporal proximity or remoteness of the crime, whether the crime is for the same or substantially the same conduct for which the defendant is on trial, and what the effect will be if the defendant does not testify out of fear of prejudice from the impeachment. (6 Cal.3d at p. 453.)

In *People* v. *Antick* (1975) 15 Cal.3d 79 [123 Cal.Rptr. 475, 539 P.2d 43], the Supreme Court again considered the matter and indicated that the trial court should apply a balancing test in determining whether to allow impeachment with a prior felony. (15 Cal.3d at pp. 97-98.) The court held that the prejudicial effect, measured by such factors as whether the prior conviction was for the same crime currently charged, whether the prosecution's case is weak, and whether the defendant might refuse to testify, should be weighed against the probative value of the conviction, measured by such factors as whether the prior conviction related to acts of dishonesty, the remoteness of the prior crime, and whether the accused has led a legally blameless life since the prior felony. (15 Cal.3d at pp. 97-99.) The court stated that in making the determination, the trial court has considerable discretion, but the discretion must be carefully exercised. (15 Cal.3d at p. 98.)

In *People* v. *Rist* (1976) 16 Cal.3d 211 [127 Cal.Rptr. 457, 545 P.2d 833] and *People* v. *Rollo* (1977) 20 Cal.3d 109 [141 Cal.Rptr. 177, 569 P.2d

771], the Supreme Court reviewed the use of prior felony convictions for impeachment purposes and in each case found that the trial court had failed to exercise its discretion. (16 Cal.3d at p. 223; 20 Cal.3d at pp. 116-117.) In *Rollo* the court said "By now it should be clear to all that when a defendant makes a timely objection to the introduction of evidence of a prior felony conviction for the purpose of impeaching his testimony, the trial court is under a duty (1) to determine the probative value of that evidence on the issue of the defendant's credibility as a witness, (2) to appraise the degree of prejudice which the defendant would suffer from admission of the evidence, and (3) to weigh the foregoing two factors against each other and exclude the evidence 'if its probative value [on the issue of credibility] is substantially outweighed by the probability that its admission will . . . create substantial danger of undue prejudice . . .' (Evid. Code, § 352)." (20 Cal.3d at p. 116.)

In the present case there is no doubt that the trial judge conscientiously weighed the probative value of the evidence against the danger of undue prejudice. He noted his familiarity with the Supreme Court precedents, including *Rollo,* and stated that he had carefully considered the motion under those precedents. He concluded that the probative value of the forgery conviction was not substantially outweighed by the danger that its admission would create undue prejudice. Since the trial court thus performed its duty, we must now review all the circumstances of the case and determine whether it abused its discretion.

In order for a defendant to be convicted of forgery he must have acted with intent to defraud. (Pen. Code, § 470.) Forgery constitutes dishonest conduct and reflects adversely on the perpetrator's veracity and integrity. (*People* v. *Antick, supra,* 15 Cal.3d at p. 99.) Defendant's forgery conviction was in September 1972, five years before the trial and not too remote to have probative value. Further, defendant has not led a legally blameless life since then, having been convicted of first degree robbery in 1973. The trial court did not err in determining that the forgery conviction had probative value for impeachment purposes.

On the other side of the balancing scale, we note that the People's case was not weak and dependent upon circumstantial evidence; the People had established a complete prima facie case through the direct testimony of several eyewitnesses. It was thus not probable that the jury would misuse the evidence by considering the conviction as evidence that the defendant was the type of person likely to participate in illegal activity,

therefore guilty. (*People* v. *Antick, supra,* 15 Cal.3d at p. 98.) The danger of misuse of the evidence by the jury was further lessened by the fact that forgery is not substantially similar to the pending charge.

The above factors support the trial court's determination. As to the effect on the administration of justice should defendant have elected not to testify, the Supreme Court has stated "We do not propose to encourage or countenance a form of blackmail by defendants. No witness including a defendant who elects to testify in his own behalf is entitled to a false aura of veracity. The general rule is that felony convictions bearing on veracity are admissible." (*People* v. *Beagle, supra,* 6 Cal.3d at p. 453.)

Under all the circumstances of this case the trial court did not abuse its discretion in allowing impeachment with the prior forgery conviction. The court excluded the robbery, a crime of violence, in favor of the dissimilar forgery conviction. We find no error.

## II

■ Defendant contends that the admission of photographs of the deceased was prejudicial error. At the beginning of the presentation of evidence the prosecutor had 10 photographs marked for identification (exhibits 1 through 10).[1] At the conclusion of the testimony of the autopsy surgeon the People moved to have the exhibits entered as evidence, but the court refused at that time stating that it would wait until further evidence was produced so that the probative value could properly be weighed against the prejudicial effect. After defendant had testified, the People again sought to have the photographs entered into evidence, noting that since the issue in the case involved the question of whether the defendant stabbed the victim in self-protection, fending off a knife attack, the photographs had substantial probative value. The People's position was that the demonstrated wounds were inconsistent with the defense theory and inconsistent with the victim's having been an

---

[1]Exhibits 1 and 2 depict the face of the victim and do not show anything related to his death. Exhibit 3 depicts the anterior part of the trunk and the left upper extremity, showing multiple stab wounds. Exhibit 4 depicts incisional wounds over the left upper extremity and stab wounds of the anterior trunk. Exhibit 5 shows the victim's left hand and arm with wounds of the skin of the hands and wrist. Exhibit 6 showed incisional wounds of the left fingers. Exhibit 7 shows an incisional wound of the upper portion of the left hand. Exhibit 8 shows incisional wounds of the left elbow. Exhibit 9 shows the front part of the victim's trunk and upper extremity with wounds of the hand and wrist and stab wounds of the trunk. Exhibit 10 shows the victim's anterior chest with stab wounds in the front part of the chest.

aggressor in a knife fight. The court excluded exhibits 1 and 2, but admitted 3 through 10.

The admission of photographs lies within the sound discretion of the trial judge, and his ruling will not be reversed unless their probative value is clearly outweighed by their prejudicial effect. (*People* v. *Murphy* (1972) 8 Cal.3d 349, 363 [105 Cal.Rptr. 503 P.2d 594]; *People* v. *Robles* (1970) 2 Cal.3d 205, 214 [85 Cal.Rptr. 166, 466 P.2d 710]. See also *People* v. *Steger* (1976) 16 Cal.3d 539 552-553 [128 Cal.Rptr. 161, 546 P.2d 665, 83 A.L.R.3d 1206].) The record supports the trial court's determination on this issue. It was undisputed that defendant killed the victim by the infliction of knife wounds. The dispute was whether defendant was protecting himself from the victim's charge with a knife or whether he alone used a knife. The testimony of the People's witnesses, eyewitnesses to the fight, was that the victim approached defendant and defendant struck with the knife; they did not see the victim with a knife. Defendant testified that the victim charged with a knife and that he was forced to use his own knife to protect himself. The wounds to the left hand were claimed to have been caused when the victim was choking defendant with both hands and defendant stabbed his hand and arm in order to free himself. The People's witnesses testified that it appeared that the victim was attempting to "fight back the knife" with his left hand. In resolving the conflict concerning the fight, the exact type and placement of the knife wounds on the deceased was critical. The pathologist did not, and in our view could not, sufficiently describe the wounds for the jury more accurately to make this determination. The mere conclusion by the pathologist that he believed the wounds to be defensive type wounds did not necessarily provide adequate assistance to the jury. The admission of the photographs under the circumstances was well within the discretion of the trial judge.

### III

■ Defendant contends that the trial court erred in failing to instruct the jury on diminished capacity. This contention lacks merit. Although such instructions should be given whenever there is evidence that the defendant was unable to form the requisite intent, they need not be given when there is no evidence from which a jury of reasonable persons could so conclude. (*People* v. *Carr* (1972) 8 Cal.3d 287, 294 [104 Cal.Rptr. 705, 502 P.2d 513]. See also *People* v. *Mayberry* (1975) 15 Cal.3d 143, 151 [125 Cal.Rptr. 745, 542 P.2d 1337].) The instructions need not be given when the evidence of diminished capacity is minimal. (*Ibid.*) The only evidence

introduced which might indicate that diminished capacity instructions would be appropriate was defendant's testimony that while he was at the party he had three cans of beer. No attempt was made to establish that the beer affected him so that he could not have formed the requisite intent to commit murder. We find no error.

■ Defendant contends that the trial court committed error in failing to instruct the jury on the definition of a "deadly weapon." Defendant requested the court to instruct on the meaning of "deadly weapon" pursuant to CALJIC No. 17.17, but the trial court refused. CALJIC 17.17 defines deadly weapon in connection with an accusation that a defendant was "armed with" a deadly weapon under Penal Code section 3024 (relating to minimum prison terms). That section was repealed effective July 1, 1977, by the Uniform Determinate Sentencing Act of 1976. (See Stats. 1976, ch. 1139.) The information charged defendant with a violation of Penal Code section 12022, subdivision (b), under the determinate sentencing law in effect at the time of his crime. That section provides an additional prison term of one year for "Any person who personally uses a deadly or dangerous weapon in the commission or attempted commission of a felony . . . ." In order to reflect the changes brought about by the determinate sentencing law, the committee on CALJIC deleted the instruction requested by defendant and amended 17.16 to define both the terms "deadly or dangerous weapon" and "used a deadly or dangerous weapon." The trial court gave this revised instruction to the jury.[2] This definition accords with prior case law defining deadly or dangerous weapon (see *People* v. *Graham* (1969) 71 Cal.2d 303, 327-328 [78 Cal.Rptr. 217, 455 P.2d 153]; *People* v. *Liner* (1959) 168 Cal.App.2d 411, 414 [335 P.2d 964]), and we believe it appropriately defines the terms of the statute. There was no error.

IV

■ Defendant contends that the findings of prior felony convictions

---

[2]The court instructed as follows: "It is charged in the information that in the commission of the crime therein described, the defendant personally used a deadly or dangerous weapon. [¶] A deadly or dangerous weapon means any weapon, instrument or object that is capable of being used to inflict great bodily or [sic] death. [¶] The term 'used a deadly or dangerous weapon,' as used in this instruction, means to display such a weapon in a menacing manner or intentionally to strike or hit a human being with it. [¶] If you find such defendant guilty of the crime thus charged, it then will be your duty to determine whether or not such defendant personally used a deadly or dangerous weapon in the commission of such crime. [¶] Such defendant may be found to have personally used a deadly or dangerous weapon at the time of the commission of the crime charged only if the proof shows beyond a reasonable doubt that such defendant personally used such a weapon at such time. [¶] You will include a finding on that question in your verdict, using a form that will be supplied for that purpose." (CALJIC No. 17.16 (1977, Rev.).)

must be stricken because the allegations in the information were not sufficient to support them. We hold that the findings are not supported by the record and that the charges of prior convictions should be remanded to the trial court with directions.

Penal Code section 667.5 provides for enhancement of prison terms for repeat offenders. An additional and consecutive term of three years is imposed when the offense of which the defendant has been convicted is one of the enumerated violent felonies and he has previously served a separate prison term for such a felony. (Pen. Code, § 667.5, subd. (a).) When subdivision (a) is inapplicable and the new offense is any felony for which a prison term is imposed, an additional and consecutive prison term of one year is imposed for each prior separate prison term the defendant has served. (Pen. Code, § 667.5, subd. (b).) The additional penalty may not be imposed for any felony for which the defendant did not serve a separate prison term. (Pen. Code, § 667.5, subd. (e).) A "prior separate prison term" is a continuous completed period of prison incarceration imposed for the particular offense alone or in combination with concurrent or consecutive sentences for other crimes, including any imprisonment on revocation of a parole which is not accompanied by a new commitment to prison. (Pen. Code, § 667.5, subd. (g).) In order to enhance the term of imprisonment for prior prison terms, they must be pleaded and proven. (Pen. Code, § 1170.1, subd. (e).)

The information in this case charged that defendant had been previously convicted of a violation of Penal Code section 470 (forgery) and that he had served a term in prison therefor. It is further charged that defendant had previously been convicted of a violation of Penal Code section 211 (first degree robbery), for which he had also served a prison term. Although such might be inferred from the dates alleged and from the content of the allegations, the information did not charge specifically that defendant had served *separate* prison terms for the two prior convictions, nor in the case of the robbery that it was a "violent felony" as defined by Penal Code section 667.5, subdivision (c). A defendant who admits a charge of a prior conviction may be held to have admitted only as great a charge as is contained in the information. (*In re Tartar* (1959) 52 Cal.2d 250, 256 [339 P.2d 553].) Absent an allegation in the information that a defendant served separate terms for prior convictions, his admission of the allegations cannot be construed as an admission to that effect. (*People* v. *Shaw* (1965) 237 Cal.App.2d 606, 618 [47 Cal.Rptr. 96]; *People* v. *Collins* (1964) 228 Cal.App.2d 460, 465 [39 Cal.Rptr. 595];

*People* v. *Figuieredo* (1956) 146 Cal.App.2d 807, 809 [304 P.2d 161].) While the information need not necessarily charge that the defendant served separate sentences if it appears from the record in some manner that such is the fact or if the court has so found, where the record does not so show and the accusation does not so charge, the additional punishment may not be imposed. (See *In re Tartar, supra,* 52 Cal.2d at p. 256.) Nothing in the record here indicates either that defendant admitted serving separate sentences or that the court found that he did so. The enhancements pursuant to Penal Code section 667.5 must therefore be reversed.

■ There is further reason to reverse the enhancement based upon the prior robbery conviction. The court applied Penal Code section 667.5, subdivision (a), and added three years to the base term. The only part of Penal Code section 667.5 under which the robbery could be deemed a violent felony for this purpose is subdivision (c)(8); it provides that any felony in which the defendant inflicts great bodily injury on a person other than an accomplice, which has been charged and proved under Penal Code section 12022.7 (or, if prior to July 1, 1977, under §§ 213, 264, or 461), and any felony in which the defendant has been charged and proved to have used a firearm as provided in Penal Code section 12022.5, is a violent felony. The information did not charge that defendant had been convicted of a violent felony, that he caused great bodily injury during the robbery, or that he used a firearm therein. Defendant did not admit any such factors, nor does the record show them. The trial court thus erred in treating the robbery as a violent felony and imposing the three-year enhancement.

V

■ In a supplemental brief defendant contends that the finding of the prior convictions must be stricken because the court failed to fully advise him of the consequences of admitting them. The contention is based upon *In re Yurko* (1974) 10 Cal.3d 857 [112 Cal.Rptr. 513, 519 P.2d 516], in which the Supreme Court held as a judicially declared rule of criminal procedure that an accused must be advised of (1) the specific constitutional protections waived by an admission of prior felony convictions charged and (2) the penalties and other sanctions imposed as a consequence of a finding of the truth of the allegations. (10 Cal.3d at pp. 860, 864.) Defendant contends that the court failed to advise him that the admitted

prior convictions would make him ineligible for probation if found guilty (Pen. Code, § 1203, subd. (d)(4)).

We find no *Yurko* error. *Yurko* states: "[A]s a judicially declared rule of criminal procedure [citation omitted] an accused, prior to the time the court accepts his admission of an allegation of a prior criminal conviction or convictions, is entitled to be advised: (1) that he may thereby be adjudged an habitual criminal pursuant to section 644 if that section is applicable in his case; (2) of the precise increase in the term or terms which might be imposed, if any, in the accused's case pursuant to section 644 or other applicable statutes (see e.g., §§ 666, 667); and (3) of the effect of an increased term or terms of imprisonment on the accused's eligibility for parole." (Fn. omitted.) (10 Cal.3d at p. 864.)

Defendant was fully and diligently advised in accordance with the requirements of *Yurko*. These do not include advice as to the effect of the priors upon eligibility for probation.

We have been provided by stipulation of counsel on appeal with the abstracts of judgment relative to the two prior convictions (robbery and forgery). We observe that the prison terms in both cases were concurrent. Accordingly, only a single enhancement of one year may be imposed because of them.

The trial court sentenced defendant to a total of eleven years in prison, six for the basic term (Pen. Code, § 190—middle term), one for the use of a deadly weapon (Pen. Code, § 12022, subd. (b)), one for the "nonviolent" felony (Pen. Code, § 667.5, subd. (b)), and three for the "violent" felony (Pen. Code, § 667.5, subd. (a)). As we have discussed, the three-year enhancement is invalid; the others are proper.[3]

The judgment is affirmed. The case is remanded to the trial court with directions to strike the three-year enhancement under Penal Code section 667.5, subdivision (a), and to reduce the total term to eight years.

Regan, Acting P. J., and Evans, J., concurred.

---

[3]The one year enhancement for the prior forgery conviction and sentence could as well have been attributed formally to the prior robbery, or to both jointly; but as noted, in view of the single prison term, it can only be imposed once.