Filed 9/25/15  P. v. Martinez CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>VALERIE MARTINEZ,<br><br>    Defendant and Appellant. | F067916<br><br>(Super. Ct. No. VCF243140C)<br><br>**OPINION** |

---

### THE COURT*

APPEAL from a judgment of the Superior Court of Tulare County.  Valeriano Saucedo, Judge.

Barbara A. Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, and Julie A. Hokans, Deputy Attorney General, for Plaintiff and Respondent.

-ooOoo-

---

\*        Before Kane, Acting P. J., Detjen, J. and Smith, J.

**INTRODUCTION**

Following a jury trial, appellant was convicted of conspiracy to commit second-degree commercial burglary (Pen. Code, §§ 182, subd. (a)(1) & 459, count 1), grand theft of personal property (Pen. Code, § 487, subd. (a), counts 2 and 3), and second-degree commercial burglary (Pen. Code, § 459, counts 4, 5, 7 and 9).[1] The court granted appellant probation for a period of three years, subject to various terms and conditions.

On appeal, appellant contends there is insufficient evidence to support the jury's finding that she conspired to commit second-degree commercial burglary. We disagree and affirm the judgment.

**FACTS**

*Prosecution Case*

In September 2010,[2] Jimmy Johnson, a regional loss prevention manager for CVS Pharmacies, noticed a large increase in the amount of "shrink" at a CVS store located at 2135 North Dinuba Boulevard in Visalia, California. Shrink is inventory that is supposed to be in the building but is not due to loss, theft, or paperwork issues. A $116,000 shrink was posted in September 2010, compared to an average of $60,000. Johnson was unable to find inaccuracies or irregularities in the accounting or inventory that would explain the loss. When he examined surveillance video for the month of September, he noticed that on September 9, five different customers left the store without paying for bags of merchandise. Similar incidents occurred on September 1.

On September 21, Johnson surveilled the CVS store. From the parking lot, he observed eight individuals leave the store with unpaid merchandise. Appellant and her shift supervisor, Amanda Hooley, were on duty at the CVS store on September 9 and 21.

---

[1] The jury was unable to reach a verdict on counts 6 and 8, appellant was found not guilty on count 10.

[2] Date designations in the factual summary are to the year 2010.

On October 6, Johnson, in conjunction with the Visalia Police Department and Detective Brian Young, conducted a surveillance operation at CVS. Appellant and Hooley were scheduled to be on duty that evening. Johnson set up video cameras inside the store and had two CVS employees notify him when individuals previously identified as shoplifters entered the store. He then tracked their movements on video. When the suspects left the store, the CVS employees would contact Visalia police officers and provide them with a description of the suspects and their vehicles. Visalia police would initiate a traffic stop of suspects they determined stole store merchandise and would escort the suspects back to CVS for police questioning.

On the evening of October 6, 14 people were taken into custody for shoplifting at the CVS store. The total amount of stolen merchandise recovered was approximately $4,395.

### Nicole Amador (Counts 1, 2 and 4)

Appellant was charged with conspiring with Nicole Amador to commit second-degree burglary. Amador is appellant's cousin. On October 6 at approximately 8:00 p.m., Amador claimed she went to the CVS store to change cars with her brother-in-law, Oscar Uvalle. Amador parked her vehicle and went into CVS to go shopping. Surveillance video showed Amador walking towards the back of the store, directly behind appellant. Amador was later seen leaving the store with a shopping cart full of unpaid merchandise.

Detective Young made contact with Amador as she was loading merchandise into her vehicle, and escorted her and Uvalle back inside the store. During police questioning, Amador told Detective Young she had stolen from the CVS store on 10 previous occasions. Amador had loaned appellant $60 the week prior to the incident. Appellant called her on October 6 and told her to come down to the store to "get what she needed." At trial, Amador denied telling Detective Young that appellant contacted her to come get

3.

things she needed from the store. She also could not recall whether she loaned appellant money.

Visalia Police Department Officer Robert Gonzales was present when Amador was taken into custody. Officer Gonzales testified that when Amador was searched, a piece of paper was discovered on her with the pre-printed label "Grocery List" across the top. The names "Val" and "Amanda" were handwritten across the top of the list. The list contained various items Officer Gonzales characterized as items Amador intended to steal.

### Oscar Uvalle

Oscar Uvalle testified he drove to the CVS store on October 6 to meet Amador. He went inside the store to get some items and walked out without paying for various items he selected. Uvalle was stopped by police as he was loading stolen merchandise into his vehicle. He denied that anyone told him to come to the store to steal, or that he planned to steal merchandise prior to entering the store.

### Yolanda Serrano

On October 6, at approximately 9:58 p.m., Visalia Police Department Sergeant Randy Lentzner stopped Yolanda Serrano's vehicle pursuant to the burglary investigation. Serrano had bags full of CVS merchandise in her possession. She admitted to Sergeant Lentzner that she did not purchase the merchandise, and stated that her friend Valerie, who worked in the store, had given the items to her.

During police questioning, Serrano related that she received a phone call from appellant telling her to come to the store that evening and pick up some items because appellant was upset with her manager. When Serrano got to the store, appellant told Serrano to take several bags full of merchandise. Serrano also related that appellant told her to take some medicine without purchasing it.

At trial, Serrano initially testified that she could not recall being at CVS on October 6 or that she was arrested that evening. Although she later recalled being

arrested, she did not recall telling officers that the stolen merchandise in her vehicle was given to her by a friend named Valerie.

### *Robert Ortiz*

Robert Ortiz testified that he went to the CVS store on the night of October 6 to purchase diapers. He walked out of the store, but returned to grab a bottle of laundry detergent, which he took without paying for. Ortiz and his friend, Alfredo Lopez, left CVS in Lopez's vehicle. They were subsequently stopped by Visalia police officers and transported back to CVS for questioning.

During police questioning, Ortiz stated that he received a telephone call from appellant telling him to come to the CVS store. When he went to the store, appellant directed him to a bag of merchandise. He maintained that Lopez removed the bag from the store. At trial, Ortiz testified he could not recall whether he told police appellant called him and told him to come to the store.

### *Maria Lopez*

On the night of October 6, Maria Lopez went to the CVS store with her daughter, Alejandra Lucatero. Lopez took items from the store without paying, and was later stopped and questioned by police. At trial, Lopez could not recall whether she told Officer Gonzales during police questioning that her daughter had received a phone call from a friend at CVS, telling her to come to the store to steal merchandise on October 6.

### *Alejandra Lucatero*

On October 6, Alejandra Lucatero went to the CVS store with her mother, Maria Lopez. Lucatero took various items from the store, put the items into a bag, and left the store without paying. At trial, Lucatero denied telling her mother that a friend from CVS called her and told her to go to the store on the evening of October 6 to steal store merchandise. She also testified that prior to October 6, she had never met appellant.

*Alfredo Lopez*

Alfredo Lopez was stopped by police on the night of October 6. He stole various items of merchandise from the CVS store that evening.

*Mark Morales*

Mark Morales, a former CVS employee, testified that on the evening of October 6, he decided to the go the CVS store with his cousin. Morales walked out of the store without paying for various items. At trial, he could not recall whether anyone called him and told him it was a good time to steal things from the store.

*Amanda Hooley*

Shift Supervisor Amanda Hooley was questioned by police on October 6. Hooley related that she knew her mother-in-law, Yolanda Serrano, had been stealing from CVS for the past few months and that Serrano stole store merchandise on the night of October 6. At trial, Hooley invoked the Fifth Amendment in response to questions about her involvement in the October 6 burglaries.

*Defense Case*

Ashely Huskins, appellant's former coworker at CVS, testified in appellant's defense. Huskins testified CVS policy prohibited employees from detaining or chasing after shoplifters because the store was in an unsafe neighborhood.

Stephanie Cortez, who had known appellant for 10 years, also testified in her defense. Cortez considered appellant to be a trustworthy person, but testified that appellant would help others at her own expense.

**DISCUSSION**

The test of sufficiency of the evidence is whether, reviewing the whole record in the light most favorable to the judgment below, substantial evidence is disclosed such that a reasonable trier of fact could find the essential elements of the crime beyond a reasonable doubt. (*People v. Delgado* (2008) 43 Cal.4th 1059, 1067; *People v. Johnson* (1980) 26 Cal.3d 557, 578; *People v. Xiong* (2013) 215 Cal.App.4th 1259, 1268.)

6.

Substantial evidence is evidence which is "reasonable, credible, and of solid value." (*People v. Johnson*, *supra*, 26 Cal.3d at p. 578.) In reviewing a record for substantial evidence, an appellate court must not reweigh the evidence (*People v. Culver* (1973) 10 Cal.3d 542, 548), reappraise the credibility of the witnesses, or resolve factual conflicts, as these are functions reserved for the trier of fact (*In re Frederick G.* (1979) 96 Cal.App.3d 353, 367).

An appellate court can only reject evidence accepted by the trier of fact when the evidence is inherently improbable and impossible of belief. (*People v. Maxwell* (1979) 94 Cal.App.3d 562, 577.) Our sole function is to determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*Jackson v. Virginia* (1979) 443 U.S. 307, 319; *People v. Marshall* (1997) 15 Cal.4th 1, 34.)

Appellant contends there was insufficient evidence to support the jury's finding that she conspired to commit second-degree commercial burglary. She specifically asserts the evidence was insufficient to show she conspired with Amador to commit burglary, instead, she contends she passively overlooked Amador's theft. We disagree.

Appellant was convicted of conspiracy to commit second-degree commercial burglary. Burglary is the entry of a structure with the intent to commit petit larceny or any felony. (Pen. Code, § 459.) "Pursuant to section 182, subdivision (a)(1), a conspiracy consists of two or more persons conspiring to commit any crime." (*People v. Morante* (1999) 20 Cal.4th 403, 416, fn. omitted.) A conviction for conspiracy under section 182, subdivision (a)(1) "requires proof that the defendant and another person had the specific intent to agree or conspire to commit an offense, as well as the specific intent to commit the elements of that offense, together with proof of the commission of an overt act 'by one or more of the parties to such agreement' in furtherance of the conspiracy." (*People v. Morante, supra*, at p. 416.)

In support of its conspiracy charge against appellant, the prosecution introduced Amador's statements to Detective Young made during police questioning. Amador loaned appellant $60 during the week prior to October 6. On October 6, Amador told Detective Young that appellant called her and told her to come to the CVS that evening to "get what she needed." At trial, Amador denied that appellant contacted her to tell her to come to CVS to steal.

Penal Code section 1111 provides that a conviction cannot be based upon the testimony of an accomplice unless that testimony is corroborated by other evidence tending to connect the defendant with the commission of the crime. "'"[T]estimony" within the meaning of ... section 1111 includes all oral statements made by an accomplice or coconspirator under oath in a court proceeding *and* all out-of-court statements of accomplices and coconspirators used as substantive evidence of guilt which are made under suspect circumstances. The most obvious suspect circumstances occur when the accomplice has been arrested or is questioned by the police.' [Citation.]" (*People v. Williams* (1997) 16 Cal.4th 153, 245, original italics.)

The corroborating evidence required by Penal Code section 1111 may be slight and entirely circumstantial and may be entitled to little weight standing alone. It need not corroborate every fact to which the accomplice testified or establish all the elements of the offense. It must, however, tend to implicate the defendant in some degree and relate to some fact which is an element of the crime. It also must be independent of—and require no interpretation or direction from—the statements of the accomplice. (*People v. Hayes* (1999) 21 Cal.4th 1211, 1270-1271; *People v. Szeto* (1981) 29 Cal.3d 20, 27.) We do not disturb the jury's finding on the issue unless the corroborating evidence should not have been admitted or did not reasonably tend to connect the defendant with the commission of the crime. (*People v. Szeto, supra*, at p. 27.)

We find the prosecution presented sufficient evidence to corroborate Amador's statements to police. The thefts discovered by Loss Prevention Manager Johnson and

8.

Visalia police all occurred on dates appellant and her shift manager, Hooley, were on duty.

When police searched Amador after she was taken into custody, a piece of paper labeled "Grocery List" was discovered on her person. The names "Val" and "Amanda" were handwritten across the top. A careful examination of the exhibits shows that numerous items of stolen merchandise recovered from Amador on October 6 match items on the grocery list, including, a dog pillow, Beggin' Strips, deodorant, a fog machine, and hairspray. Considering that Amador stole CVS merchandise on October 6, while appellant was on duty, this list strongly corroborates Amador's initial statement to police that she conspired with appellant to steal CVS merchandise that evening.

In addition to the grocery list, Amador's statement was corroborated by the statements of three independent witnesses, Ortiz, Serrano, and Maria Lopez. During police questioning, these witnesses stated that appellant told them to come to CVS to steal on the evening of October 6. We find sufficient evidence was presented to find appellant and Amador agreed to, and had the specific intent to commit, second-degree commercial burglary.

We also find sufficient evidence was presented to find that an overt act was committed in furtherance of the conspiracy. Surveillance video taken on the night of October 6 inside the CVS store shows Amador following behind appellant. Amador is later seen leaving the store with a shopping cart containing unpaid merchandise. Amador admitted she had not paid for the CVS merchandise in her possession.

Amador's statement to police that appellant told her to come to the CVS store on October 6 to "get what she needed," in addition to surveillance video showing her entering and leaving the store with unpaid merchandise, plainly demonstrates overt acts in furtherance of the conspiracy. (*People v. Ragone* (1948) 84 Cal.App.2d 476, 480 [An act, which may be otherwise lawful, completes the crime of conspiracy when it is done for the purpose of effecting the object of the unlawful agreement]; *People v. Nance*

9.

(1960) 181 Cal.App.2d 147 [entry into a house was an overt act in furtherance of agreement to burglarize the home]; *People v. Keller* (1963) 212 Cal.App.2d 210, 220 [coconspirators going to vicinity of store they planned to burglarize was an overt act].)

The record shows substantial evidence of a conspiracy between appellant and Amador to commit second-degree commercial burglary, and an overt act in furtherance thereof.

## DISPOSITION

The judgment is affirmed.